## Cassidy's Estate.

*Will—Codicil—Gift to widow—Power c<sup>f</sup> appointment.*

Where a testator gives all of his estate absolutely to his wife, and appoints her executrix, but later owing to her mental condition he makes a codicil appointing another person as executor, and directing such person as trustee to use the income of the estate for the support and maintenance of his wife, and after her death to dispose of the estate as she shall by will direct, the estate upon the death of the wife intestate, goes to the heirs and next of kin of the wife and not to those of the husband.

Argued Jan. 19, 1909. Appeal, No. 304, Jan. T., 1908, by Charles G. McCloskey, from decree of O. C. Phila. Co., Jan. Term, 1901, No. 495, dismissing exceptions to adjudication in Estate of Michael J. Cassidy, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Exceptions to adjudication.

ANDERSON, J., filed the following adjudication:

The testator died March 14, 1900, leaving him surviving his widow, Margaret Cassidy, but no children, and neither father, mother, brother or sister; and having first made and published his last will and testament, dated December 24, 1880, by which he gave, devised and bequeathed all his estate to his wife absolutely, and appointed her executrix of his will. The wife having become temporarily, at least, insane, it was necessary for her to be removed to a hospital for patients of that character, and on the same day, being March 5, 1900, the testator, fearing, no doubt, that she was unable properly to manage his estate, or to look after her own affairs, made a codicil to his will, in which he provided as follows: "As it is my desire that my wife Margaret Cassidy shall not have any unnecessary trouble with my affairs I hereby appoint my friend, George Vaux, Junior, to be the Executor of my Will in lieu and stead of my said Wife; and I further hereby constitute and appoint him Trustee for her,

and give, devise and bequeath to him the whole of my estate In Trust he to invest the same and keep it invested, and after defraying the necessary expenses of management to pay over the net income derived therefrom unto my said wife Margaret Cassidy for her support and maintenance, but so that no part thereof shall be subject to attachment or other legal process. And upon the decease of my said wife I direct my Trustee to dispose of my said Estate in such manner as she shall by her last Will and Testament direct."

Margaret Cassidy, the widow, died October 3, 1907, without exercising the power of appointment, and leaving collateral kindred.

At the death of the decedent his next of kin were unknown to the executor. At the audit claim was made on the part of certain persons that they were the next of kin, and entitled to the estate under the intestate laws, on the ground that the codicil had so changed the will as to reduce the estate, given to the wife, from an absolute one to a life estate with the superadded power of appointment; and that, in default of such appointment, the testator had died intestate.

A question having arisen as to whether or not there were next of kin to the decedent, the audit was postponed for further investigation on this point. Subsequently the next of kin and heirs of the wife, Margaret Cassidy, presented a claim to the auditing judge on their behalf to the whole estate, on the ground, that the codicil had not so changed the will as to deprive the wife of her absolute estate. A subsequent hearing was had, at which the testimony of Mr. Vaux, the accountant, was taken as to the facts surrounding the testator at the time of the execution of the will, and the case was ably and elaborately argued. In construing this will and codicil we must bear in mind that this is the will of a childless man whose whole family consisted of his wife. The claim here is that the codicil is so repugnant to the terms of the will as to change its character. While it is true that an absolute gift can be reduced by a subsequent unequivocal direction to a lesser estate, as in Shower's Estate, 211 Pa. 297; Sheetz's Appeal, 82 Pa. 213, yet, we must bear in mind that this direction

must be unequivocal, and, also, that the codicil cannot be construed as revoking the will, but should be read as part of it, modifying, wherever the terms of the codicil are inconsistent with the will, and reaffirming the original will except as it is so modified by the codicil. "The fundamental distinction between the nature of a codicil and a later will should be borne in mind," said Mr. Justice POTTER, in Sigel's Estate, 213 Pa. 14; "the later will works essentially a revocation, while the codicil is a confirmation except as to the express alterations which it may contain; and, therefore, while in the case of a later will a revocation may be presumed, this is not true of a codicil. It means rather an addition than a revocation." To the same effect see opinion of Mr. Justice WILLIAMS, in Shalters v. Ladd, 163 Pa. 509. That is, the two together form one instrument, the codicil being the last expression of the testator, and overriding the will where the two are antagonistic.

Applying this rule to the present case, we find, first, that the testator gave his estate to his wife without any limitation as to time; secondly, he puts it in trust for her benefit, to relieve her of the management and to save her from her incapacity; thirdly, he directs all the income to be paid for her maintenance and support; fourthly, she has a power to devise, and bequeath it generally; and lastly, the estate given to her is not only without limit as to time, but there is no limitation over on failure to make a will, want of issue, or for any other cause. The sole purpose of the testator in making his will was to provide for his wife, and he gave her the whole of the estate. Nor does the codicil, in the mind of the auditing judge, show any change in that intent. True it is, that he takes the legal estate from her, and vests it in the hands of a trustee, which is one of the elements which the Supreme Court held, in Nevins's Estate, 192 Pa. 258, showed the intent of that testator to reduce an absolute gift to a life estate. But in that case there were other expressions which showed clearly that the testator did intend to reduce the quantity of the estate; and here the testimony of Mr. Vaux—which to the auditing judge should only be considered so far as showing

the circumstances surrounding the making of the codicil; being incompetent as to anything in reference to the contents thereof, or the declaration of the testator, or witness, as to the meaning of the language of it—shows clearly why this change was made. No sensible man, whose wife had the misfortune to be even temporarily out of her mind, would rest content with a will in which the management of the property was left in her hands. Under these circumstances, the testator naturally would feel that it would be better not to leave his property under the control of the wife; so he states in the codicil, and names a trustee for her, providing someone to guard her interests in the matter—a most natural and wise provision, which, under these circumstances, would not show an intent to reduce her interest in the gift. He, however, giving her still the whole beneficial interest without any gift over, and provides the estate should go under her last will and testament. We have, therefore, in reading these two papers together, an absolute gift modified by a trust for the wife's protection, with power in her of a disposal by will. Does this reduce the gift as contended from an absolute to a life estate?

The auditing judge is of the opinion that the rule of law, as gathered from the authorities, is to the contrary; that where there is a devise in a will, the will is only changed so far as necessary by the codicil, and reaffirmed as to the balance. Again, that where there is a devise or bequest indefinitely, and no gift over, the devisee or legatee takes an estate in fee, as in Sheetz's Appeal, 82 Pa. 213. In Taylor's Estate, 4 Phila. 376, THOMPSON, P. J., says: "By the will, the bequest is absolute and unqualified, not restricted to his life, and not limited over. The codicil gives the trustees authority to hold the principal and pay only the interest to the legatee, according to their discretion. Does this alone restrict the bequest to a life interest only? Without a limitation or some further indication of such an intention, we think it does not. In this case there is nothing to show that the testator desired to do more than to enable the trustee to prevent an unwise use of the legacy. It was given to the legatee for his sole benefit; no

other beneficiary was thought of. It is not to be supposed that the testator intended to limit the bequest to unknown parties who might by law be entitled to inherit from the legatee, rather than to leave it to be disposed of as the first taker might think proper. The trustees might restrict him to the interest, but his right in the corpus of the legacy remained absolute. It is of course vested at his death in his administrators."

In McAleer's Estate, 4 Pa. Dist. Rep. 360, PENROSE, J., says: "It is a principle in the interpretation of wills, so well established that it has become text-book law, that under an absolute gift, in the first instance, to children or legatees, followed by a direction that the shares shall be held upon trusts which do not exhaust the whole interest, the legatees take their shares absolutely, subject only to the qualifying trusts: Hawkins on Wills, 267, 268; Theobald on Wills, 245. This is a corollary of the rule that a clear gift will not be cut down by subsequent words except to the extent clearly and necessarily indicated."

In addition to this there is the rule that where there is a general gift without limitation as to life, with superadded power of appointment, this does not cut down the general gift, but is simply an expression of the testator that the devisee or legatee shall have that power which has already been given. As was said by PENROSE, J., in Shallcross's Estate, 13 Phila. 374: "The distinction between a grant for life, with power of appointment by will, and a general grant, with similar power, is well settled. In the latter case the gift is construed as conferring the absolute property, and the power is regarded as nothing more than an anxious expression of the donor that the donee may have an uncontrolled power of disposing of the property."

In the present case the inference is so strong that the testator did not intend to limit the absolute gift in the will by the codicil, that no other conclusion can be reached. The balance of this fund, is, therefore, awarded to the administrator of the widow.

The court dismissed exceptions to the adjudication.

*Errors assigned* were in dismissing exceptions to the adjudication.

*James C. Sellers,* for appellant.—The contention of the appellant is that the purpose and effect of the codicil to Michael J. Cassidy's will were to reduce the absolute interest given to his wife by the terms of the will to a life estate merely, with a superadded power of appointment. Or rather, to revoke the absolute gift altogether, and to give her in its stead the right to receive the net income from the trustee during her life, with power to direct by will how the trustee should dispose of the principal.

If the codicil stood alone, there can be no doubt that it would be construed so as to give the widow a life interest only: Lewis's Est., 108 Pa. 133; Nevins's Est., 7 Phila. 506; Oyster v. Knull, 137 Pa. 448; Schoyer v. Kay, 217 Pa. 32; Shower's Est., 211 Pa. 297; Howland v. Clendenin, 134 N. Y. 305 (31 N. E. Repr. 977).

*Thomas Earle White,* of *White, White & Taulane,* and *Francis Macomb Gumbes,* with them *Ernest E. Prevost, Walter Penn Shipley* and *Wm. S. Windle,* for appellees.

PER CURIAM, March 22, 1909:

The decree is affirmed for the reasons stated in the adjudication by the learned judge of the orphans' court.