## Ball's Estate.

*Wills—Construction of will and codicils.*

Testator devised real estate of which he died seised to his four children. His mother had devised her real estate to him for life, with remainder to his children. He directed in regard thereto, that his sons, J. and A., who were indebted to him, should pay their indebtedness out of their grandmother's estate as soon as received. By a codicil, after reciting that his son A. had transferred to him his interest in his grandmother's estate, he provided that the income thereof should be held by A. and his wife for their lives, and the life of the survivor, and on the death of the survivor, should vest in A.'s children. By a subsequent codicil, after ratifying his will and former codicil, he directed as follows: "I order and direct in regard to my son A. that . . . my estate which is not part of the trust estate provided for in the first codicil shall be held in trust for" him, and "after his death, the principal thereof to vest absolutely in his children, share and share alike . . ." In case of interference with the proper execution of the will or codicils by A., he devised "the above share" to his brothers and sisters. On petition for an inquest in partition, A.'s trustee set up by answer, that the second codicil revoked the will and first codicil and vested the entire estate in the trustee: *Held*, that on consideration of the will and codicils together, it was apparent that the testator intended to benefit all four children equally, but for reasons satisfactory to himself had put A.'s share in trust, and that the inquest should be awarded.

Petition for inquest in partition and answer. O. C. Phila. Co., Jan. T., 1922, No. 494.

*Joseph R. Embery,* for petitioners; *Theodore F. Jenkins,* for respondent.

Gest, J., April 28, 1922.—Joseph Ball, the testator, died in 1919 seised of certain real estate, and by his will, dated in 1906, he devised the same, after the death of his wife, which event has occurred, to his four children, Joseph Price Ball, Henry Price Ball, Arthur W. Ball and Rebecca W. Ball, in equal shares, all of whom survived the testator and his widow. The mother of the testator by her will had devised her estate to him for life, with remainder to his said four children, and the testator in his will, after reciting that two of his children, Joseph and Arthur, were indebted to him, directed that they should pay their indebtedness out of their grandmother's estate as soon as received, in order that his wife might have as large an estate as possible for her support and comfort.

A codicil, dated in 1910, after reciting that the testator's son Arthur had transferred to him the interest of the said Arthur in the grandmother's estate, provided that the income thereof should be used by his wife for her

life, and on her death that the estate so conveyed to him should be held by his son Arthur and his wife for their lives and the life of the survivor, and on the death of the survivor should vest in Arthur's children. In other respects he ratified and confirmed his will.

The testator then, in 1911, executed a second codicil, which gives rise to the controversy in this case. In this codicil, after ratifying and confirming his will and former codicil, except so far as they conflict with the second codicil, the testator directed as follows:

"I order and direct, in regard to my son Arthur W. Ball, that immediately after the death of my wife, Sarah P. Ball, my estate which is not part of the Trust estate provided for in the First codicil, shall be held in trust for the benefit of my said son, Arthur W. Ball, the net income of the same to be paid to him for life by the Commonwealth Title Insurance and Trust Company, and after his death, the principal thereof to vest absolutely in his children, share and share alike; if any children be deceased before their father, then their child or children, if any, shall take said deceased parent's share. If any interference or attempt to prevent the proper execution of this will or its codicils is made by said Arthur W. Ball, then the above share shall be divided between the brothers and sister of said Arthur W. Ball."

The widow having died in 1921, Joseph Price Ball, Henry Price Ball and Rebecca W. Ball filed this petition for an inquest in partition, and the trustee for Arthur W. Ball, in its answer, asserts that the second codicil revoked the devise contained in the will to the petitioners, and that its effect was to vest the title to the whole of the estate in the respondent. The case hinges on the meaning of the words in the second codicil, "my estate which is not part of the trust estate provided for in the first codicil shall be held in trust for the benefit of my son Arthur." The respondent claims that this refers to the entire estate of the testator, except that part of the testator's mother's estate which Arthur had conveyed to him, while the petitioners claim that these words refer merely to Arthur's share of the testator's estate.

We are clearly of opinion that the second codicil, by its express terms, was intended to affect only the share of the testator's estate which in his will he devised to his son Arthur in fee. His language appears to be explicit. He says, "I order and direct in regard to my son Arthur," and proceeds to establish a trust for him, having in the first paragraph of the codicil expressly ratified and confirmed the will in other respects. The obvious intention of the testator with regard to his son Arthur was at first, in his will, to give him his one-fourth share of the estate in fee. His first codicil dealt with Arthur's share of his grandmother's estate, conveyed to the testator by Arthur, and this, after the death of the testator's wife, he gave to Arthur and his wife for life, with remainder to their children. Then, in the second codicil, desiring to make a further change with regard to Arthur, and him alone, the testator established a trust for him.

To give to the language of the second codicil the effect of disinheriting the other three children would stretch it far beyond any reasonable construction. A codicil is intended to change the provisions of the prior will; that is its function; but the will continues, except so far as it is changed by express language or necessary implication, and in other respects the codicil is to be read and construed as part of the will. Cassidy's Estate, 224 Pa. 199; Sigel's Estate, 213 Pa. 14, and Schattenberg's Estate, 269 Pa. 90, are in point. If the testator had intended to give his entire estate to Arthur or in trust for him, there would be no apparent reason for the testator's apprehension that Arthur would interfere or "attempt to prevent the proper execution of this

will or its codicils." There would be no motive for him to do so, and it will be noted that the testator says "the proper execution of this will," which reference would be meaningless if, as it is contended, the provisions of the will as to the three other children were abrogated in favor of Arthur. And, in this connection, it will be noted that the testator provides, in case of Arthur's interference, that "the above share shall be divided between the brothers and sister of said Arthur." This use of the word "share" in the singular number shows very clearly that Arthur's interest was only of an aliquot part of the estate, not the whole of it. And, finally, if the testator, in his second codicil, had intended to devise the entire estate in trust for Arthur, there would be no reason for his recital of the fact that the indebtedness of Arthur had been satisfied as of the date of the codicil.

A consideration of the will and codicils convinces us that the testator desired to benefit his four children equally, but, for reasons satisfactory to himself, he intended to put Arthur's share in trust for his life so as to preserve the principal for Arthur's children.

An inquest is accordingly awarded in accordance with the prayer of the petition.