# B'Nai B'Rith Orphanage, Etc., Appellant, *v.* Roberts, Exr., et al.

*Wills—Construction—Trusts and trustees—Termination of trust—Life estate—Power of sale.*

1. Where a testator creates a trust of specified real estate and definitely fixes the duration of the trust "as during the life of his sister," and gives to his executors a power to sell real estate, which they exercise, the fund realized from the sale takes the place of the real estate, and the trust continues during the life of the sister as though there had been no sale.

2. If it appears that, after the death of the sister, the real estate was to vest in a charity, the charity cannot claim a termination of the trust during the sister's lifetime, where the testator's will, properly construed, shows that the intention of the testator was that the sister should have, during her lifetime, an interest in the income accruing from the real estate or from the proceeds of its sale.

Argued May 4, 1925. Appeal, No. 276, Jan. T., 1925, by plaintiff, from decree of O. C. Erie Co., Nov. T., 1923, No. 94, construing will of Isaac Ostheimer, on petition under the Uniform Declaratory Judgment Act, in case of B'Nai B'Rith Orphanage and Home for Friendless Children of District No. 3 v. Robert L. Roberts, surviving Executor of Isaac Ostheimer, deceased, Clara M. Strauss et al. Before MOSCHZISKER, C. J., WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Petition under the Uniform Declaratory Judgment Act of June 18, 1923, P. L. 840, to construe will of Isaac Ostheimer. Before CLARK, P. J.

The opinion of the Supreme Court states the facts.

Decree for defendants: 6 Erie R. 149. Plaintiff appealed.

*Error assigned* was decree, quoting it.

*John B. Brooks,* with him *Charles H. English* and *Frank B. Quinn,* for appellant.—The primary intention of testator was to establish a charitable institution to be known as the Home for Unemployed and, in lieu of that, to provide for a home to be erected by the B'Nai B'Rith Orphanage and Home for Friendless Children of District No. 3. The provision for Clara M. Strauss was secondary and was made only to take care of an accumulation which might be considered as otherwise undisposed of by testator in his will. Even if there is some uncertainty as to the language used in connection with the bequest to Clara M. Strauss, the last portion of paragraph eleven provides that the fund shall go to the petitioner. This clearly restricts the gift to her of the interest on the fund arising from rents and income from the real estate, for, it is a well recognized principle of law that, where two independent gifts are given, the first one may be cut down by the subsequent gift: Smith v. Piper, 231 Pa. 378; Roberjot v. Mazurie, 14 S. & R. 42; Pagel's Est., 20 Pa. Dist. R. 666; Lefebvre v. D'Arcy, 236 Pa. 235.

*W. Pitt Gifford,* of *Gunnison, Fish, Gifford & Chapin,* and *F. A. Bliley,* for appellees.—If a trust is created for the life of one, it cannot be terminated before his death, although there are other words that imply it may be terminated earlier: King's Est., 210 Pa. 435; Derbyshire's Est., 239 Pa. 389; Goodell's App., 99 Pa. 525; Kirkpatrick v. M'Donald, 11 Pa. 387; Sadler's App., 87 Pa. 154; Frank v. Kurtz, 4 Pa. Superior Ct. 233; Morrison v. Blake, 33 Pa. Superior Ct. 290.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, June 27, 1925:

This is a proceeding brought under the Uniform Declaratory Judgment Act of June 18, 1923, P. L. 840, to obtain a construction of certain provisions in the will of Isaac Ostheimer, deceased.

The assignments of error raise, and the statement of question involved sets forth, but one point for decision, namely, Is the B'Nai B'Rith Orphanage, appellant, entitled to an award of the proceeds from the sale of certain real estate at the present time, or must they be held in trust until the death of testator's sister, Clara M. Strauss?

Before proceeding to a decision of the above question, it may be noted that all parties concerned agreed, through their counsel, at the bar of this court, to treat as constitutional the statute under which these proceedings were brought. On a similar state of facts, we recently said, in Aaron v. Woodcock, 283 Pa. 33, that, "In assuming jurisdiction, we must not be understood as determining constitutional points [relating to the Declaratory Judgment Act] or as indicating any view with reference thereto"; and this applies to the present case. See also List's Est., 283 Pa. 255, and Devlin's Est., 284 Pa. 11.

Isaac Ostheimer died June 24, 1917; by his will, dated November 21, 1916, after directing the cremation of his body and the payment of his debts, he placed $30,000 in trust, the net income therefrom to be paid at semi-annual periods to his sister Clara M. Strauss "during her lifetime"; and he further provided that, "should the Social Service Federation of Erie......, not later than five years after [his] decease, assume and become responsible for the equipment and maintenance" of a home, which he hoped to found, this $30,000 should be paid to such society at the death of his sister, but, if the society did not, within the period named, formally "assume and become responsible for the permanent maintenance" of the home, then he directed that "upon the death of [his] sister," the fund in question should be paid to other uses. Several paragraphs of the will are devoted to special bequests and devises with which we are not here concerned. In the eighth paragraph, testator vests in his executors full power to sell "any portion" of his real estate, "whenever, in their opinion

and judgment, such sale or sales shall be necessary." In the ninth paragraph, he states that, should the Social Service Federation assume responsibility for the home he had in mind, the property owned by him at 1027-29 State Street, Erie, Pa. (being the premises here in controversy), should be sold as soon after his decease as, in the opinion of his executors, the best price could be obtained for it and the leases on the premises would permit, and that "the proceeds arising therefrom, together with the net proceeds of the income arising from said premises from time of my decease until said sale, shall be used for the purpose of purchasing a suitable site [for the contemplated home]." In the paragraphs for our particular consideration, testator provides as follows: "Tenth—From the rentals and income arising from the premises at Nos. 1027 and 1029 State Street ......shall first be paid the taxes, insurance and other maintenance expenses of said property, and the net balance shall be kept invested by my executors in good interest-bearing securities, and the principal and interest of said net proceeds shall upon the conditions hereinbefore specified be added to the proceeds realized from the sale of said premises and the joint amount used, upon the conditions hereinbefore specified for the purchase of a site and the erection of a building thereon to be named and used as hereinbefore designated [meaning for the contemplated Home]. Eleventh—In case the Social Service Federation......shall not within five years after my decease......assume and become responsible for the permanent maintenance......of the Home hereinbefore designated......, I do will and direct that the net balance of rentals and income arising from the premises at Nos. 1027 and 1029 State Street, as specified in the tenth paragraph of this my Will [meaning the accumulated balance which might be on hand at the time of the abandonment of the Home idea, through the refusal of the Social Service Federation to act], and all net income arising therefrom [meaning from the real

estate in question] during the life of my sister Clara M. Strauss, shall be held in trust by my father, Jacob Ostheimer, or his successor as trustee, during the lifetime of my said sister, and the net income arising therefrom [meaning from the combined sums, i. e., the fund accumulated before the abandonment of the Home idea and that accumulated thereafter during the life of testator's sister] be paid semi-annually to my said sister during her life. Upon the death of my said sister Clara M. Strauss, the principal sum thereof [meaning all the accumulated funds at that time on hand, from which the beneficiary had been receiving income, as distinguished from the price or value of the real estate itself] and all net income thereafter arising until said premises shall be sold, shall go, share and share alike, to my uncle Henry Baker and my brother, Arthur G. Ostheimer, should they both then be living, or to the survivor of them, should either one of them not be at that time living, and [at that time, i. e., upon the death of Clara M. Strauss] the said premises shall be sold by my executors hereinafter named whenever in their opinion and judgment such sale can be made to the best advantage, and the proceeds therefrom [meaning from the sale of the real estate] shall go to the B'nai B'rith Orphanage and Home for Friendless Children, of District No. 3, for the erection of a suitable building upon the grounds owned by said Orphanage, which shall be called the Isaac Ostheimer Home for Orphans."

The Social Service Federation did not avail itself of any of the provisions of decedent's will, but, on October 21, 1921, "declined to assume or accept them." The real estate was subsequently disposed of for $85,000 by the executors of decedent's estate, and the sale was confirmed December 26, 1922. We agree with the court below that the fund thus raised took the place of the properties sold, and that Clara M. Strauss, who still lives, has the same interest in the income therefrom as

she had, before the sale, in the net rentals of such properties.

The will names two executors, one of whom is the person designated as trustee in paragraph eleven. They are given a general power, by paragraph eight, to sell "any real estate" the testator might own at the time of his decease; and a specific power by paragraphs nine and eleven to sell the particular piece of real estate here involved; paragraph nine commands a sale of the premises, in case the Social Service Federation accepts the trust for the home, while paragraph eleven contemplates the sale only in the event that the Federation refuses the trust and the premises are still unsold at the death of testator's sister, whereupon "the proceeds arising therefrom" shall go to the present appellant. The death of testator's sister is fixed as the time for distribution of the principal. Since the sale has taken place prior to that time, it must be treated as an exercise of the power conferred by the eighth paragraph of the will; on general principles, the fund thus realized takes the place of the real estate and the trust continues during the life of Clara M. Strauss as though there had been no sale.

A careful reading of the whole will shows that, while the testator's first consideration may have been the Home he contemplated founding, yet, in the event of the abandonment of the project (which occurred when the Federation refused to assume its charge), his next consideration plainly was to increase the sum provided for the maintenance of his sister Clara M. Strauss, and, after her death, his care was for the B'Nai B'Rith Orphanage, appellant in this case. In testator's endeavor to do justice to these three interests, some confusion of expression appears, particularly in the use of the adverb "therefrom" in the eleventh item of his will, but a careful study of that document convinces us that his real meaning is as shown above by the explanatory words which we have inserted and bracketed in our transcription of the paragraphs in question. Testator meant

that, should the home mentioned earlier in his will be not established, then, during the life of his sister, all income accruing from the particular real estate here involved, or from the proceeds of the sale thereof, should be accumulated and held in trust for her, and that the net income arising from this source, as well as from the fund theretofore accumulated under item ten, should be paid to her. When we consider the interests testator evidently had in mind, and their order as above stated, it becomes plain that this was the peculiar plan which he worked out and, in his own way, expressed.

We conclude there is nothing in paragraph eleven, or elsewhere in the will, which sanctions a termination of the trust before the death of testator's sister, as such action would be inconsistent with the provisions made therein for her benefit. The duration of the trust is definitely fixed,—"during the lifetime of [his] sister,"— and the court below properly decided that the B'Nai B'Rith Orphanage was not presently entitled to have awarded to it the proceeds from the sale of the real estate in controversy.

To the extent last above indicated, which covers the sole point for our determination, the decree appealed from is affirmed at cost of appellant.