## Williamsport, Appellant, *v.* Williamsport Water Co., Appellant.

Argued April 21, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ,

*Caspar Townsend,* of *Townsend, Elliott & Munson,*
*Max L. Mitchell* and *George F. B. Appel,* with them
*Frank P. Cummings,* City Solicitor, for appellant, the
City of Williamsport.—The court has jurisdiction:
Kariher's Petition, 284 Pa. 455; Wirsing v. Smith, 222
Pa. 8: Limper v. Electric Co., 297 Pa. 204; List's Est.,
283 Pa. 255; Ladner v. Siegel, 294 Pa. 368; Williams-
port v. Citizens' Water & Gas Co., 232 Pa. 232; New
Brighton Boro. v. Water Co., 247 Pa. 232.

In view of the definite holding that the 1917 proceed-
ings, being a part of the equity proceedings, had begun
in 1908, there would seem to be no question but that
the public service commission had no jurisdiction over
the matters leading up to the judgment of 1920, or,
thereafter, nor was in any way concerned with the valid-
ity of the agreement or judgment of 1920. And that,
further, by reason of this holding the city submits that
the approval of the commission was not at that time, nor
is it now, necessary for the acquisition by the city of the
water works.

The city contends that the judgment of 1920 is more
than a judgment in the mandamus actions of 1917; it is
a judgment on proceedings to acquire the water works,
which proceedings had been begun in 1908 by bills in
equity.

From 1920 until 1927 no effort was made on the part
of the city either to proceed with the acquisition or to
complete the necessary financing. The water company
has at various times contended that the city is guilty of
laches because of this delay.

There can be no objection of laches or delay with re-
spect to the lien of a judgment unless there is an effort
made to enforce the lien of such judgments as have liens.

The judgment gives the city the right at any time to
have a peremptory mandamus.

This delay of seven years harmed neither party.

*Frederick L. Ballard,* of *Ballard, Spahr, Andrews & Ingersoll,* with him *Allen Hunter White* and *Edgar Munson,* for appellee.—The lower court should have dismissed the petition for want of jurisdiction to enter a declaratory judgment on questions presented: List's Est., 283 Pa. 255; Dempsey's Est., 288 Pa. 458; Leafgreen v. La Bar, 293 Pa. 263; Kariher's Petition, 284 Pa. 455; McCalmont v. McCalmont, 93 Pa. Superior Ct. 203; Kimmel's App., 96 Pa. Superior Ct. 488; Lyman v. Lyman, 293 Pa. 490; Ladner v. Siegel, 294 Pa. 368.

The lower court was correct in holding (a) That the agreement and judgment of 1920 are without force and effect and (b) That the commission's certificate is necessary before the city can purchase the company's plant.

The application of the Public Service Company Law cannot be avoided by agreement between a city and a water company.

The law has no retroactive effect and does not apply to proceedings which were pending when it was enacted: Reynoldsville Boro. v. Water Co., 247 Pa. 26; New Brighton Boro. v. Water Co., 247 Pa. 232; Waynesboro Water Co. v. Pub. Ser. Com., 78 Pa. Superior Ct. 143.

OPINION BY MR. JUSTICE SCHAFFER, May 12, 1930:

The immediate proceeding before us is one in which the City of Williamsport seeks a declaratory judgment in connection with its endeavor to acquire the works and property of the Williamsport Water Company under the provisions of the Act of April 29, 1874, P. L. 73, which provides (clause 7, section 34) : "It shall be lawful at any time after twenty years from the introduction of water or gas, as the case may be, into any place as aforesaid, for the town, borough, city or district into which the said company shall be located, to become the owners of said works, and the property of said company, by paying therefor the net cost of erecting and maintain-

ing the same, with interest thereon, at the rate of ten per centum per annum, deducting from said interest all dividends theretofore declared." The court below dismissed the petition for the declaratory judgment on the ground that the litigation between the parties had its inception after the Public Service Company Law went into effect, and that it was incumbent upon the water company to procure a certificate of public convenience from the commission before proceeding further. Both the city and the water company have appealed, the former, from the action of the court in dismissing the declaratory judgment proceedings and in denying the validity of an agreed-upon judgment entered in the year 1920 fixing the price of the water company's works and property, and the latter, because of the court's failure to sustain its preliminary objections to the declaratory judgment proceedings, and from its conclusion that the approval of the public service commission of the judgment of 1920 could still be given. Both appeals will be disposed of in this opinion.

On June 1, 1907, the city passed a resolution declaring its intention to acquire the plant of the two water companies then serving it, which have since been merged into the Williamsport Water Company, provided "that the electors of the said city shall assent, at a public election, to be held for that purpose to the increase of additional indebtedness of said city......to a sum sufficient to effectuate the purchase." In 1908 the city filed bills in equity against the predecessor companies of defendant to get access to their books to compute the price to be paid. The court entered decrees favorable to the city, which were set aside by this court in Williamsport v. Citizens' Gas & Water Co., 232 Pa. 232, and Williamsport v. Williamsport Water Co., 232 Pa. 255, on the ground that the remedy was not in equity but at law in mandamus. It was directed in each case that the cause should be transferred to the law side of the court. These decisions were handed down July 6,

1911, and for six years the city did nothing. During this interval the Public Service Company Law of July 26, 1913, P. L. 1374, was passed and approved, effective January 1, 1914, which required, by article III, section 3(d), and article V, section 18, a certificate of public convenience from the commission as a condition precedent to any municipal acquisition of water plants under the Act of 1874, and in article III, section 11, that "No contract or agreement between any public service company and any municipal corporation shall be valid unless approved by the commisison."

In 1916, the water companies voluntarily allowed the city to make an examination of their books and the city thereafter moved the court to transfer the two equity suits to its law side in compliance with the orders entered on appeal and the transfer was made accordingly in June, 1917. On November 20, 1917, the city presented petitions for writs of mandamus to compel the conveyance of the works and property of the water companies upon payment of the purchase price thereof, computed in accordance with the provisions of the Act of 1874. Writs of alternative mandamus were issued, which the defendants moved to quash on a number of grounds, one of which was that the city had not secured the requisite certificate of public convenience from the commission. The court refused to quash the writs but did not pass upon this objection to them. Thereafter the two mandamus actions were consolidated conformably to the merger of the two companies and on June 1, 1920, a compromise agreement of settlement was negotiated between the city and the water company stipulating the terms of an agreed-upon judgment to be entered thereon, which judgment was duly entered on June 17, 1920. It recites that the demurrers filed by the city are overruled and that the action is at issue upon the petitions for writs of alternative mandamus and the returns thereto. The judgment fixed the price of the works and property of the water company at $1,766,624 as of De-

cember 31, 1919. Of this price, the sum of $1,471,432.61 represented the cost as of December 31, 1919, of erecting and maintaining the works and property, and the sum of $295,191.39 the interest on such cost computed at the rate of ten per cent per annum after deducting from such interest all dividends theretofore declared and certain investments belonging to the company not included in its works and property. The judgment stipulated that the city "may and shall at any time have a peremptory mandamus against the defendant to compel it to convey to the plaintiff its works and properties covered by this action upon the payment to the defendant of the price or cost thereof......adjusted as of the date when and on which the said works and property are acquired and taken over; which adjustment shall be made by adding to the price or cost of $1,766,624 as aforesaid, the net cost of erecting and maintaining the works and property of the defendant incurred after December 31, 1919, together with interest computed at the rate of ten per centum (10%) per annum on one million four hundred seventy-one thousand four hundred thirty-two and $61/100$ dollars ($1,471,432.61) from December 31, 1919, and also interest at the same rate on each item of cost of erection and maintenance incurred after December 31, 1919, from the date on which such item was incurred, after deducting from the combined interest charges all dividends declared by defendants after December 31, 1919, and also all reserve funds and investments accumulated after that date."

Following the entry of the judgment in June, 1920, in accordance with the provisions of the original resolution of June 1, 1907, requiring the consent of the electors, an election was held on November 2, 1920, at which they voted down the project of acquiring the defendant's property by refusing to assent to the increase of indebtedness necessary to effectuate the purchase. From this time until 1927, a period of seven years, the city did nothing. On August 2d of that year, it passed a new

resolution repeating its desire to take over the water company property and calling for another vote of the electors of the city on the question. At this election, a majority of the votes were cast in favor of the proposal. On January 10, 1928, the city by resolution directed that the purchase price of the water company property should be exactly determined and authorized its officers to make application to the public service commission for a certificate of public convenience. Accordingly the city on January 27, 1928, made application to the public service commission for such certificate. The city took the position before the commission that such a certificate was unnecessary because the litigation in connection with which it was asked and which had culminated in the consent judgment of 1920 had commenced in 1908 before the Public Service Company Law became effective. It explained to the commission that the application was made for reasons of expediency. In its application to the commission, the city asserted its right to buy at the compromise price fixed by the judgment of 1920. The water company denied any right to buy at the compromise price and by evidence sought to show that the statutory price at the time the matter was laid before the commission would aggregate somewhere between $4,800,000 and $6,500,000. The commission decided the certificate necessary, but held the proceedings without granting the certificate in order that the city should have opportunity to secure judicial determination of its legal rights under the old judgment. On May 27, 1929, following the decision of the commission, the city filed its petition for the declaratory judgment now before us in order to secure judicial determination of the validity of the judgment of 1920. The water company filed objections to the petition on the grounds that there was no jurisdiction under the Declaratory Judgments Act and because the commission was not joined. As heretofore stated, the court dismissed the petition for the declaratory judgment.

The contention of the city is summed up in its statement of the question involved, which in substance is whether the consent judgment entered in 1920 was valid when made and is still in force, and incidentally whether this question can be passed upon in a declaratory judgment proceeding. The position of the water company is that the judgment of 1920 is of no effect, that the declaratory judgment proceeding was not invokable to test the question and that the city has lost all right to acquire its property and works under the resolution of June 1, 1907, and what followed it, and that if it desires to acquire them, it must begin a new proceeding.

We are of opinion (1) that the situation is not one in which a declaratory judgment is proper; (2) that, by the adverse vote of the electors taken in 1920, the effort to acquire defendant's property and works under proceedings theretofore initiated was terminated; (3) that the lapse of time between June 1, 1920, and 1927, when the favorable vote of the electors of the city was taken, bars the right of the municipality to proceed under its original resolution of June 1, 1907, even if the electors had not adversely voted in 1920; and (4) that the project, if it is to continue, must be carried on through the public service commission. We will as briefly as possible sum up the reasons for the determinations we have reached.

That the situation in hand is not one in which a declaratory judgment is proper is manifest under our ruling in Ladner v. Siegel, 294 Pa. 368, 375, that "The Declaratory Judgments Act of 1923 was not intended to be used to modify or elucidate judicial decrees." For the same reason that it cannot be used to elucidate decrees, it cannot be used to elucidate judgments. We might stop here, but think it proper to express our views on the merits of the controversy.

The adverse vote of the electors in 1920 terminated the right of the city to take over defendant's plant under the resolution of June 1, 1907, and made the agreed-upon

judgment ineffectual. In that' resolution, the city declared its intention to become the owner of the works and property of the defendant, provided the electors of the city gave their assent to the necessary increase of indebtedness. But they did not. The city was just like any other purchaser of property. Its principals, the electors, determined not to buy and when this conclusion came about, all proceedings under the resolution of June 1, 1907, were at an end. It would be manifestly unjust to hold that a municipality could by resolution decide to take over the plant of a water company, and at intervals running over a long period of years submit the question to its electorate whether the purchase should be made and during all this time hold the water company in the hollow of its hand, until the electors, for one reason or another, should favorably decide upon the proposition; once the electors have determined against acquisition under a resolution such as was passed in this case, the matter should be at an end and the city be required to begin anew, if it thereafter desires to acquire the property. We have determined under cognate situations that where the prescribed procedure requires, for consummation, the concurrent affirmative action of two or more public authorities, negative action by one of them terminates the proceeding.

Thus in Com. v. Baker, 212 Pa. 230, where the proceeding was for the erection of a county bridge under the Act of June 13, 1836, P. L. 551, which provides (section 35, page 560) that "if, on the report of viewers, it shall appear to the court, grand jury and commissioners of the county, that such bridge is necessary, and would be too expensive for such township or townships, it shall be entered on record as a county bridge," the favorable report of viewers was filed of record on April 19, 1897, and the grand jury concurred on September 8, 1897, but the county commissioners, whose concurrence was requisite, refused to do so. Three years later, the court approved the report and it was again submitted to the

county commissioners, who reversed their former action and concurred. In 1904, a petition was filed for a mandamus to compel the commissioners to construct the bridge, which the commissioners resisted. We there said, page 233, "It is evident that the legislature intended that these three bodies should act as checks upon each other in the unnecessary expenditure of public money in the erection of county bridges. When either of them therefore have put their disapprobation on record, the proceeding falls." The same principle was applied in Com. v. Griest, 196 Pa. 396, the question under consideration being the adoption of amendments to the Constitution, where affirmative action by agreement of a majority of the members of each house in two legislatures is required and thereafter such proposed amendment or amendments are to be submitted to the qualified electors. Speaking of this situation, we said (page 407) : "The only authorities which have any right to assent or to dissent to the adoption of the amendment are the two houses of the General Assembly, and the people. If these latter vote adversely, it falls."

The lapse of time bars the city from proceeding. In matters such as this the law contemplates a proceeding at least reasonably continuous and the long break from the beginning to the end of the proceeding, even if there had been no adverse electoral vote, bars the municipality from continuing. As we pointed out in Com. v. Baker, 212 Pa. 230, 233 : "The statute contemplated a proceeding at least reasonably continuous. A break of seven years and a half and then precipitate action by new officers is clearly unreasonable. All parties interested might fairly have inferred that the enterprise had been abandoned." In Pittsburgh & Lake Erie R. R. Co. v. Lawrence Co., 198 Pa. 1, a county bridge case, there was a break of seven and one-half years between the taking of successive steps, and we held this barred further proceedings; while in Fayette County Commissioners' Petition, 289 Pa. 200, 205, we held, "If......a long period

of time is permitted to elapse......a new proceeding must be instituted."

If new proceedings are to be brought by the city, they must be initiated by it before the public service commission, where the net cost of erecting and maintaining the works and property of the water company can be ascertained. It would be manifestly unfair to fix such net cost on the basis of the compromise agreement reached in 1920. We have said that the Public Service Company Law "operated directly upon the rights of a municipality by qualifying its right to acquire at its own pleasure the property of a water company within its limits": Reynoldsville Boro. v. Reynoldsville Water Co., 247 Pa. 26, 30. In New Brighton Boro. v. New Brighton Water Co., 247 Pa. 232, where proper proceedings had been begun prior to the effective date of the Public Service Company Law, in quashing the proceedings for certain irregularities therein, we said (page 240), "since we must quash the present writ and enter judgment for the defendants, we take occasion to state that any new efforts made by the plaintiff borough to take over these water works will be subject to the provisions of that statute." In that case, the proceedings might have been continued,—in the one before us, they were totally ended by the adverse popular vote.

The order of the court below dismissing the petition for a declaratory judgment is affirmed at the cost of the City of Williamsport.