## Middleton Estate

*Frederick E. Smith,* for petitioner.

SATTERTHWAITE, J., June 11, 1954.—Testator, who died on January 2, 1888, directed the investment of the trust of his residuary estate in United States and Pennsylvania bonds, or in first mortgages on real estate located within a specifically defined and closely limited part of central Philadelphia, with limitations

on the aggregate amount of any one mortgage investment both in proportion to the entire estate and in relation to the assessed value of the mortgaged premises. The trust still continues, the income therefrom being presently payable to testator's two children for their lives, distribution to be made of principal 20 years after their respective deaths to testator's grandchildren living at that time, with a contingent remainder over to the Merchant's Fund of Philadelphia.

Presently before the court is the petition of the trustee asking for an order under section 945 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.945, authorizing the settlement of an alleged dispute between the trustee and the income beneficiaries as to the investment powers of the former. The petition recites that the $460,000 trust estate is presently invested in the type of securities specified in the will and yields 3.07 percent in income but could yield in excess of four percent if the entire field of "legal investments" were available to the trustee. It further contrasts the rates of interest on United States and Pennsylvania bonds in 1881 when the will was written with those currently paid, and asserts difficulty in obtaining mortgage investments, particularly as restricted by the geographic and valuation limitations of the will. The petition is joined in by testator's children, his present grandchildren and the Merchant's Fund of Philadelphia, the contingent remaindermen. No guardian or trustee ad litem has been requested or appointed for minor or unascertained parties, it being claimed that all parties interested have joined and are sui juris, and even if this be not true that under section 983 of the Fiduciaries Act of 1949 (incorporating section 704 thereof by reference), the same is unnecessary since there are on the record living persons sui juris having similar interests.

The petition, as amended, sets up as the "dispute" that the beneficiaries contend that the trustee has the right to invest in any "legals" and is not limited to the investments specified by testator, in view of section 18 of the Fiduciaries Investment Act of May 26, 1949, P. L. 1828, 20 PS §821.18, and certain decisions interpreting the same, since no express restriction to the contrary is contained in the will; whereas the trustee alleges that it refuses to go beyond the investments specified in the will unless protected by a decree of this court so authorizing.

The trustee further suggests as an alternative ground that since the income beneficiaries were the primary objects of testator's bounty, and since the rate of return on the specified investments has declined or such investments have become difficult or impossible to obtain, there has been an unanticipated impairment in the accomplishment of the purposes of the trust, and the court should permit deviation therefrom under principles enunciated in section 167 of the A. L. I. Restatement of the Law of Trusts.

The petition, as amended, concludes with the averment that since all beneficiaries have joined in the request to the trustee to extend the investments of the fund into the entire field of legal investments, petitioner as trustee is willing to have the dispute settled on that basis and to have the court approve such settlement. Accordingly, the order presented with the petition would authorize the trustee to invest in any investment defined as a legal investment by any applicable statutes now or hereafter in effect.

The petition must be dismissed without decision on the merits since it is obviously an effort by the trustee to secure an advisory opinion for its advance protection in the future administration of the trust. While there would appear to be substantial authority in recent decisions of several highly regarded orphans'

courts of the State tending to justify the broader field of investments contended for, nevertheless, in only one of them was the matter brought before the court in any way approaching the manner it has been here. Thus, in Drexel Trust, 1 Fid. Rep. 530 (1949); Rouse Estate, 369 Pa. 568 (1931); Smith Trust, 2 Fid. Rep. 393 (1952); Myers Trust, 85 D. & C. 425 (1953); Brown Trust, 85 D. & C. 452 (1953); Frazier Trust, 3 Fid. Rep. 399 (1953); Woolston Trust, 4 Fid. Rep. 141 (1953); Wayne Trust, 4 Fid. Rep. 100 (1954); and Tower Trust, 87 D. & C. 447, the problem was considered at audit of the accounts of trustees in light of actual investments made, with specific exceptions filed requesting surcharges or directions to dispose of questioned and specifically identified items. In Close Trust, 83 D. & C. 136 (1952), the matter came up on a petition by a beneficiary to terminate the trust, one of the grounds alleged being the inadequacy of the income as a result of the trustee's interpretation of the investment clause of the will, which interpretation the Orphans' Court of Philadelphia rejected in denying the petition. Smith Trust, 3 Fid. Rep. 401 (1953), appears to be the only case where the court announced any decision passing upon the question in advance and approving in an advisory fashion an uncontested petition for leave to go beyond the will and make future investments in any "legals" authorized by the Act of 1949; and even there, the petition was presented in the course of the audit of an account filed by reason of the death of a cotrustee. Since the advisory nature of the ruling was not discussed and since no reasons were given therefor, we decline to follow this case as a precedent for the disposition of the within petition.

Prior to the Fiduciaries Act of 1949 and the Orphans' Court Act of 1951, it was well settled that the court had no duty to act in an advisory capacity

for fiduciaries subject to its supervision. On the same type question here presented, the Supreme Court had held that the orphans' court had no authority, even under the Uniform Declaratory Judgments Act, to give an advance opinion or interpretation of the investment powers of a testamentary trustee where the purpose was, as it quite apparently is here, to protect the trustee against possible future surcharge in anticipation of events which may never happen: Carwithen's Estate, 327 Pa. 490 (1937). The following quotation from page 493 of the opinion in that case is particularly pertinent:

"If a trust investment is properly questioned, the burden of showing the wisdom or propriety of his conduct in making it is on the trustee. It is at that time and in that proceeding that the discretion exercised by him will be scrutinized in the light of the will and of the Fidcuciaries Act. The primary inquiry will be whether he has performed according to the recognized standard applied to the facts that existed at the time of the investment. In considering the matter, a subordinate question may in some cases be involved, whether (as petitioners claim here) the will shows that the testator enlarged the field of investment and to that extent relieved his trustees from the restrictions imposed by the statute. But it is when the court deals with the principal question that the subordinate one will be decided. Petitioners now desire a decision of what in some future proceeding may or may not be a subordinate question. It is easy to see that in some circumstances such a question cannot arise, and that in others in which it may arise, the facts on which it may then be presented cannot be anticipated. The contingent character of the circumstances presented by petitioners takes the case out of the class in which the court will enter declaratory judgments. The court is not vested with jurisdiction to give advice merely: Cryan's Estate, 301 Pa. 386, 391, 152 A. 675."

Compare Capital Bank and Trust Company's Petition, 336 Pa. 108 (1939); Kahn v. William Goldman Theatres, Inc., 341 Pa. 32 (1941); Eureka Casualty Company v. Henderson, 371 Pa. 587 (1952); Malick's Petition, 133 Pa. Superior Ct. 53 (1938); Fry's Estate, 25 Erie 33 (1942); Ransley's Estate, 61 Montg. 251 (1945).

We do not believe that these considerations are in any way altered by the enactment of the Fiduciaries Act of 1949 or the Orphans' Court Act of 1951. No provision of section 301 of the latter, 20 PS §2080.301, defining the jurisdiction of the orphans' court, would appear even to purport to create any advisory duties in the connection under consideration, although subsection (11) thereof may conceivably raise the question with respect to construction of administrative powers as to real estate, a matter with which we are not here concerned. While section 702 thereof, 20 PS §2080.702, authorizes the judicial disposition of questions relating to either the administration or the distribution of a trust upon a full or partial accounting, "or in any other appropriate proceeding", we will not strain the construction thereof into a requirement that advisory opinions be given in advance upon questions which may never actually arise or which may never ripen into an actual controversy.

Similar observations may be made with respect to the Fiduciaries Act of 1949. We find nothing therein which would change the law as stated in Carwithen's Estate, supra. Section 945 thereof, 20 PS §320.945, under which the within petition was presented, relates to the compromise or settlement of, inter alia, *any question or dispute* concerning the validity or construction of any will or trust instrument, . . . or any *controversy* affecting any trust," and provides that upon petition the court "*may* enter a decree authorizing the compromise or settlement to be made." (Italics sup-

plied.) This section is substantially the same as section 40 of the Fiduciaries Act of June 7, 1917, P. L. 447, 20 PS §787, from which it was derived. We have been referred to no case, and independent research has disclosed none, where this section or the predecessor legislation was availed of for the purpose here urged. We do not believe the legislature so intended. In the absence of binding precedent, we will not construe this section to require the taking of jurisdiction of a petition seeking a purely advisory opinion, a construction which would render the statute of doubtful constitutionality as a legislative effort to turn the courts from tribunals organized to determine controversies judicially into those of giving legal advice, a function not contemplated by our organic law: Rebmann's Estate, 338 Pa. 120, 125 (1940); Lee's Estate, 40 D. & C. 194, 197 (1941), affirmed, 343 Pa. 567 (1941); Dym Estates, 90 Pitts. L. J. 531 (1952).

In the present case, we are not satisfied that there is any justiciable dispute or controversy within the meaning of section 945. Even under the amended petition, it is the trustee who is the moving party, and who is asking for, not opposing, an order authorizing a broader field of investment. It is alleged that all of the parties beneficially interested in the trust estate made the request originally, and that all have joined in the petition. If this be so and if the trustee does make such investments, then it would appear that no controversy exists and it would seem highly unlikely that actual litigation could or would ever result.

If the principles of law be as contended for in the trustee's petition, then even though all parties beneficially interested do not join in the present application, no possible surcharge can come to the trustee by reason of investments in "legals". On the other hand, if those principles not be correct or applicable, and if possible parties not be represented on the present

record, the relief requested should not be entered in any event. In short, this court does not intend to be placed in the position of a "superfiduciary" and made responsible for the actual administration of the trust estate; rather, that is one of the duties of the trustee for which it receives its compensation.

We conclude, therefore, that section 945 of the Fiduciaries Act of 1949, under the circumstances presented by the within petition, does not require, even if it authorizes, the entry of the order requested by the within petition; accordingly, we decline to act thereon.

Nor do we believe that the alternative ground suggested by the trustee, that of permission to deviate from the terms of the will under section 167 of the A. L. I. Restatement of the Law of Trusts, may properly be invoked in this case. The first subparagraph of this section of the restatement provides as follows:

"(1) The court will direct or permit the trustee to deviate from a term of the trust if owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust; and in such case, *if necessary to carry out the purposes of the trust,* the court *may* direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust." (Italics supplied.)

While we may assume that section 167 is a proper statement, in general, of the law of Pennsylvania: Longbotham's Estate, 346 Pa. 94 (1943); Lehigh University v. Hower, 159 Pa. Superior Ct. 84 (1946); nevertheless, the only Pennsylvania cases considering this principle with respect to investment powers of trustees of private trusts have refused to apply it. Thus, Judge Hunter, in his supplemental adjudication in Close Trust, supra, 83 D. & C. 136, 146, characterized the judicial right to approve a deviation from the terms of a trust as an extraordinary power and quoted

with approval the following from an earlier decision of the Orphans' Court of Philadelphia:

"Such jurisdiction, however, will be sparingly exercised and deviation is to be permitted only on proof that the instructions of a testator cannot be complied with. Neither desire of the cestuis for a larger income nor greater convenience of the trust administration can be accepted as appropriate reasons to move the court to exercise this exceptional power."

See also comment (*b*) of §167 of the A. L. I. Restatement of the Law of Trusts. Compare comment (*bb*) thereto, added in the 1948 supplement to the restatement, p. 899, the last clause of the first paragraph of which we decline to follow in the absence of controlling authority, under circumstances such as here presented, even if applicable, as to which we have reservations.

On this phase of the matter we believe that Hartenstine's Estate, 54 D. & C. 280 (1945), while obviously distinguishable, is closely analogous and points to the proper decision. In that case the will directed that the trust fund be invested at no less than six percent interest in first mortgages on real estate. Before accepting distribution of the funds from the executor, the trustee filed a petition seeking permission to deviate from the terms of the trust under section 167 of the restatement, averring that since the will was executed, circumstances not anticipated by testator rendered it impossible to comply with the six percent provision and asking the court to authorize the investment of the fund in legal investments. All parties then beneficially interested in the trust joined in the petition. The court dismissed the petition, observing at pages 283-84 as follows:

"For obvious reasons our courts have been reluctant to give advisory opinions unless a real controversy exists or is sure to develop. With a little encourage-

ment fiduciaries would be likely to shift most of their responsibilities to the courts. Even if this petition were founded upon the Uniform Declaratory Judgments Act, it would be far outside the scope of relief according to the authorities reviewed in *Carwithen's Estate*, supra. The beneficiary's affirmative acquiescence to investments yielding less than six per cent. renders any controversy from that side not only remote, but removes it as a possibility. Complaints which the remaindermen might have when the trust terminates cannot arise from a lesser interest rate, but only from acts or omissions of the future. Against such claims, the trustee is plainly entitled to no advance protection under any theory."

Another class of cases requires mention and explanation. In re Kirby Memorial Health Center, 36 Luz. 70 (1941), and Long Asylum Trustees' Petition, 63 D. & C. 284 (1948), were both decisions in which the orphans court, on application of the trustees, permitted deviation from the investment powers of the will in order to provide increased income, and so prevent the failure of established institutions of a public or charitable nature, which would have been the result if such relief were not granted. These cases were decided on principles enunciated in section 381 of the A. L. I. Restatement of the Law of Trusts and by analogy to the well-established chancery powers and duties of the court under the cy pres doctrine in order to prevent the frustration of the public or charitable objects of testator. Reference was also made in the latter case to section 41 (a)2 of the Fiduciaries Act of June 7, 1917, P. L. 447, as amended by the Act of July 2, 1935, P. L. 545, sec. 2, 20 PS §804 (now repealed; compare section 10 of the Fiduciaries Investment Act of May 26, 1949, P. L. 1828, 20 PS §821.10), which authorized investment of funds of fiduciaries under direction of the court in real estate or State or municipal bonds of

172

States other than Pennsylvania. Obviously, neither the principles relied upon in these decisions, nor the statute last referred to, have any present application.

*Order*

And now, June 11, 1954, for the reasons stated in the foregoing opinion, the petition for leave to invest in legal investments is dismissed and refused without prejudice or decision on the merits as to the substantive matters therein presented.