23   249
107   783
f107   784

SUSANNAH A. FLANDERS, et al., plaintiffs in error, *vs.* DAVID FLANDERS, administrator, defendant in error.

[1.] Those who are entitled to repudiate a sale made by an administrator to himself, must elect to do so within a reasonable time.

In Equity, from Bibb county. Tried before Judge POWERS, at May Term, 1857.

This was a bill filed by Susannah A. Flanders, John T. Price and wife, Artemas Archer and wife, and James E. Flanders, (a minor, by his next friend, John T. Price,) against David Flanders, the administrator of Henry Flanders, deceased.

The bill alleges that Henry Flanders departed this life intestate, about the 2d November, 1843, possessed of a considerable estate, and leaving as his heirs and distributees, the said Susannah A. Flanders, his widow, and their infant children, Sarah L. Flanders, who has since married John T. Price, Martha M. Flanders, who has married Artemas Archer, and James E. Flanders, still a minor.

The defendant, David Flanders, administered upon the estate, and took possession of the same, and refuses and has failed to account with and pay to complainants, their shares thereof.

The bill further and more distinctly charges that said administrator, amongst other property, of said estate, exposed and offered for sale a negro woman named Winny, and her two children, and that he procured one William L. Lightfoot to bid off said negroes for himself, and the said slaves were knocked down to Lightfoot at the price of $650, when they were worth double that amount, and defendant induced and prevented others present from bidding, by representing that he was desirous of bidding off said property for the benefit of the widow and children; that the negroes were delivered at first to Lightfoot, who afterwards delivered them to defendant, who has had possession of them ever since, and has accounted to said estate for only the sum of $650.

The bill prays for an account of intestate's estate; that the sale of said negroes be set aside, and be fairly administered and accounted for.

The answer admits the death of Henry Flanders; that complainants are his distributees, and the administration by defendant, as charged in the bill. But, defendant denies that the sale of the negroes was made as charged by com-

plainants; denies that he did or said anything at the time of the sale to prevent persons from bidding; denies that there was any agreement or understanding between Lightfoot and himself in relation to the purchase of said negroes; that Lightfoot bought them at his own motion, for himself and upon his own judgment and responsibility, and that the price bid $650, which although now appears to be very low, was at that time a fair price; that the negroes had been appraised at $700. That they were sold on short credit, and that about the time the note became due, it was agreed that defendant should take the negroes and pay for them, the amount of the note, this trade was fair and *bona fide*, and not made in pursuance of any previous contract or arrangement of the parties.

Defendant further avers that he is willing and ready to come to a full accounting, concerning his transactions as administration and to pay to the parties entitled, whatever sums may be found due to them, in his hands; but says that he has paid out more than he has ever received; that his disbursements exceed his receipts, and that he has made considerable expenditures and advances for the benefit of complainants, for which he has made no charge, and that upon a full and fair settlement, said estate will be found in arrears to him.

### Brief of Evidence.—For Complainants :

*Miss Sarah Abbott* testified, that she knew the negro woman named Winney, and her children, they were in the possession of Henry J. Flanders at the time of his death. Defendant, as his administrator, took possession of the negroes, after his death. Defendant said he put them up at public sale in October, 1845. William Lightfoot bought them; he said that he got Lightfoot to bid off the negroes, as he, being the administrator, could not do it, as they did not bring their value; he did not say who they were bid off for; the negroes were sent back, by defendant, to Mrs. Flanders'

after the sale, and she kept them until December, 1845. Defendant then took them away, and they have been in his possession since; thinks that the negroes, at the time of the sale, were worth a thousand dollars, and are now worth from twenty-five hundred to three thousand dollars.

To the cross-interrogatories the witness answered, that she was not at the sale, and knows nothing of her own knowlege, except what defendant told her in reference to said sale. Complainant did not have money enough at the time of the sale, to purchase the negroes, but got some afterwards, and tendered the same for the negroes, which was refused. Mrs. Flanders remained in Georgia some three months after the sale, and then went to Alabama on a visit. She was not in need while in Alabama, as she stayed with her uncle, and he provided for her. After she returned she was in destitute circumstances, as the house had been rented and the furniture sold; defendant did not allow the negroes to remain with her, nor did she receive any assistance from them after December, 1845; conversation with defendant was at complainant's house in Bibb county, in the presence of Mrs. William Lightfoot, in December, 1845.

*William T. Lightfoot*, for complainants, testified, that he was present at the sale of the negroes in October, 1845. He bid off and purchased them for $650, and sent them from the court house where they were sold, to Mrs. Flanders'; he gave his note payable on the 25th December, or the 1st of January following. The negroes remained with Mrs. Flanders until just before or about the time the note fell due, when defendant agreed to pay the note himself and take the negroes, witness accepted this proposition and defendant took the negroes. Considered $650 a full price for the negroes at the time of the sale. Defendant and himself had no understanding whatever in reference to his bidding off the negroes. Witness bid them off for himself; he and defendant were partners in the mercantile business at the time, and have been ever since. They are partners now.

Flanders et al. vs. Flanders, adm'r.

*Rowland Bivins*, for complainants, testified, that negroes of the age of Winney at the time of the sale, if likely and healthy, were worth from five to six hundred dollars, the two children would have been worth $300.

## For Defendant :

*Robert Collins*, testified, that he was at the sale of the negroes, and bid for them ; he ran them up to about $650, considering them worth about $700; that while he was bidding, thinking that perhaps some one was trying to buy them in for the widow, he called defendant aside and asked him if such was the case, defendant replied that no one was bidding for the widow, and told witness that he wanted the negroes to bring as much as they could be sold for; witness bid about $650, thinking that if he could get them at that price he could make fifty dollars, the negroes being worth about $700, and he desired to speculate on them ; negroes were then pretty low, negroes are now pretty high, a girl 17 or 18 years old, would bring $900, a girl 13 would bring $700, and so in proportion to age, &c.

Here the testimony closed.

The jury, under the charge of the Court, found for defendant, and complainants moved for a new trial.

1st. Because the verdict is contrary to law and the evidence.

2d. Because the verdict is strongly and decidedly against the weight of evidence.

3d. Because the Court erred in refusing to charge the jury as requested, "that if defendant purchased by himself or a third person, at his own sale, the sale ought to be set aside, although defendant paid a full price."

4th. Because the Court erred in refusing to give in charge to the jury, the following request, "that the duty of the administrator in reference to the sale of the property belonging to his intestate, does not end until the purchaser complies with the terms of the sale; and in this case, his duty

in reference to the sale did not end until Lightfoot complied with the terms of sale.

5th. Because the Court erred in charging the jury that an administrator may purchase property at his own sale, and said sale is voidable only, and not void, but in order to sustain the purchase, the administrator must show that a full price was paid, that he took no unfair advantage of the estate.

6th. Because the Court erred in charging the jury, that if Lightfoot purchased the negroes at the administrator's sale, without any understanding with defendant, that he should purchase them, and he (Lightfoot,) gave his note for the negroes, that it was competent and legal for defendant, after that, to agree with Lightfoot, before or at the time the note fell due, that he would pay the note and take the negroes. Defendant's duty as administrator, having, in the opinion of the Court, ceased with the sale and the taking of Lightfoot's note for the property.

The Court refused the motion for a new trial, and complainants excepted.

LANIER & ANDERSON, for plaintiffs in error.

STUBBS & HILL, for defendant in error.

*By the Court*—BENNING, J. delivering the opinion.

Was any one of the grounds of the motion for a new trial good? We agree with the Court below in thinking, that not one was.

That the first and second grounds, were not good, a bare reading of the evidence, ought to satisfy anybody.

As to the third ground, there is this to be said:

First, according to the great preponderance of the evidence, the sale made by the administrator, David Flanders, was not a sale to himself, but to a third person, Lightfoot.

Secondly, this sale took place some ten years before the commencement of the suit. One of the daughters of the intestate had been married four years before the commencement of the suit. That daughter and her husband, and the widow of the intestate, are two of the complainants—counting the daughter and her husband, as one party.

Of these two parties, then, one was *sui juris*, ten years, the other four years, before the commencement of the suit. The suit was the first complaint which either of them, or which, indeed, any of the complainants, so far as appears, ever made against the sale.

We think, that a delay of complaint against such a sale, for as much as four years, by persons *sui juris*, is a delay for an *unreasonable* length of time. In four years, trover is barred.

The request contained in this third ground, was general; it was, therefore, a request as much applicable to the case of these two parties who had thus been *sui juris* for at least four years, as it was to the case of the other parties who were still *non sui juris*. This request, being thus general, was rejected as a whole.

[1.] Now no case, I believe, has gone the length of deciding, that the heirs can repudiate a sale made by the administrator to himself, unless they elect to repudiate it, within a *reasonable* time.

All which being so, we think, that there was nothing in this third ground.

I beg to refer to *Mercer vs. Holloway*, decided at this term, for some views of my own, on the question of the validity of sales made by administrators to themselves.

As to the fourth ground, it seems, that the terms of sale were, that purchasers were to give their notes, to fall due in a short time after the sale, for the price of the articles they might purchase. And it also seems, that Lightfoot, who bid off the negroes in dispute, gave his note made payable at the end of a short time, for the price at which he bid them off. But if Lightfoot did this, he fully *complied* with the terms of

the sale, and therefore, (supposing him to have been acting for himself,) acquired a complete title to the slaves.

These things being the facts of the case, they were such that they did not authorize this request.

What is said of this ground, it must be manifest, is applicable to the sixth, and is sufficient to show, that that ground is not good.

The fifth ground is the only one that remains.

If the charge referred to in this ground, was "erroneous," it can hardly be said, that it was a charge "*against*" the applicants for the new trial. Acts of 1854, 46. There was a vast preponderance of proof in favor of the hypothesis, that the sale was not made to the administrator at all, but, to Lightfoot. If, therefore, the Court had even gone so far, as to charge, that a sale made by an administrator to himself, is absolutely void, the charge would not, if the jury had done their duty by the evidence, have at all benefitted the complainants in the bill. *A fortiori* is this true, if the Court had gone no further, than to charge that such a sale was *voidable* at the option of the heirs. And further than this, it is not contended that the Court ought to have gone.

It may admit of a serious doubt too, whether the latter clause of the charge, was not intended to apply to "*void*," and not to "*voidable*," in the previous clause.

Upon the whole we are not satisfied, that this fifth ground is a sufficient one.

I refer again to *Mercer vs. Holloway*, for some views of my own, on the question involved in this ground.

We think the judgment ought to be affirmed.

Judgment affirmed.