## Lyman, Appellant, v. Lyman et al.

*Wills—Construction—Rule in Shelley's Case—Life estate or fee —Heirs—Legal representatives—Words and phrases.*

1. Where a life estate is devised to a person and mediately or immediately to his heirs in fee or in tail, "the heirs" are words of limitation, not of purchase, and the devise to the first taker is enlarged to a fee.

2. The phrase "legal representatives" when used with reference to real estate, is to be construed as equivalent to the word "heirs," and, when so used, the intent of the testator is that the first devisee, even though named as a life tenant, takes as a source of inheritable succession.

3. Before a devise to one and his heirs is removed from the rule in Shelley's Case, on the ground that the heirs took directly from testator, they must take independently of the fact that they are heirs of the person named as life tenant.

4. A devise to a son "for and during the term of his natural life, and, from and after his death, to his heirs or legal representatives," vests in the son an estate in fee simple.

*Judgments — Declaratory judgments—Actual controversy—Parties—Costs—Premature suit.*

5. Jurisdiction will never be assumed in a declaratory judgment proceeding unless the tribunal applied to is satisfied that an actual controversy, or the ripening seeds of one, exists between the parties, all of whom are sui juris and before the court, and that the declaration sought will be a practical help in ending the controversy.

6. The court will not assume jurisdiction where there is no controversy pending or threatened.

7. Where the petitioner prays for the construction of a will and it appears that his heirs may have an interest as purchasers, the court will not assume jurisdiction, unless a trustee or guardian ad litem be appointed for his unborn children, who in case of his death might be his heirs.

8. Where plaintiff in such case prematurely brings suit he must pay the costs.

Argued May 8, 1928.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 198, Jan. T., 1928, by plaintiff, from declatory judgment of C. P. Potter Co., Sept. T., 1927, No. 33, for defendants, in case of W. L. Lyman v. Arthur M. Lyman et al.   Reversed.

Petition for declaratory judgment.   Before HECK, P. J.

The opinion of the Supreme Court states the facts.
Judgment for defendants.   Plaintiff appealed.

*Error assigned* was judgment, referring to record.

*A. N. Crandall,* for appellant.—The devise to the appellant in this case comes within the rule in Shelley's Case as adopted by the courts of this State: Stout v. Good, 245 Pa. 383; Swank's Est., 270 Pa. 395; Martin v. Grinage, 289 Pa. 473; Garver v. Clouser, 218 Pa. 611; Lee v. Sanson, 245 Pa. 392; Harrison v. Harris, 245 Pa. 397; Grimes v. Shirk, 169 Pa. 74; Criswell's App., 41 Pa. 288.

The words "legal representatives," as descriptive of the remaindermen here, are synonymous with "heirs": Lesieur's Est., 205 Pa. 119; Ware v. Fisher, 2 Yeates 578; Com. v. Bryan, 6 S. & R. 81; Bair's Est., 255 Pa. 169; Troxell's Est., 90 Pa. Superior Ct. 533; Conrow's App., 3 Penny. 356; Shapley v. Diehl, 203 Pa. 566; Stout v. Good, 245 Pa. 383; Physick's App., 50 Pa. 128; Reiff v. Pepo, 290 Pa. 508; Yarnall's App., 70 Pa. 335.

No printed brief for appellee.

Opinion by Mr. Chief Justice Moschzisker, June 30, 1928:

The court below entered a judgment under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840; plaintiff has appealed.

Lewis W. Lyman died testate in August, 1900; by his will he gave certain real estate to plaintiff as follows: "I give, devise and bequeath to my son, William L. Lyman [several properties, describing them]. All of said lots are devised to my said son William L. Lyman, for and during the term of his natural life, and from and after his death, I devise and bequeath the same to his heirs or legal representatives."

William L. Lyman, the plaintiff, has no children or issue; the petition prayed that a judgment be entered declaring that the above item of his father's will vests in him a fee simple title to the properties described. The right to such an order was denied by other children of testator, defendants in this proceeding, who, in the absence of issue of William L. Lyman, may become his heirs, and who alleged that the testamentary clause in question creates a life estate only.

It is well established in Pennsylvania that, "When a life estate is devised to a person, and in the same will an estate is limited 'mediately or immediately to his heirs in fee or in tail,......"the heirs" are words of limitation, not of purchase,' and the devise to the first taker

is enlarged to a fee": Stout v. Good, 245 Pa. 383, 385. "Technical words shall be taken to have been used according to their proper technical sense, unless the other parts of the will imperatively require a different one": Doebler's App., 64 Pa. 9, 15. We held in Lesieur's Est., 205 Pa. 119, 122, that the phrase "legal representatives," when used with reference to real estate, is "to be construed as equivalent to the word 'heirs' "; and, as just noted, that word, in a will, is presumed to be meant in its technical sense, as one of limitation, unless there is something else in the instrument which shows that it was intended in another sense: Swank's Est., 270 Pa. 395, 396. Here, the will not only lacks an indication that the word "heirs" was meant in other than its legal sense, but followed as it is by the expression "or legal representatives," these latter words reinforce the presumption, flowing from the use of the technical word "heirs," that testator intended the ancestor of such heirs as a source of inheritable succession, the heirs representing by succession their ancestor, the first devisee.

The court below, however, took another view, and, in holding that plaintiff had but a life estate, said: "If, as is contended by the petitioner, the words 'heirs or legal representatives,' are......words of limitation, and, under the rule in Shelley's Case, vest in William L. Lyman a fee in the land, then [the] provision [containing them] ......could have been omitted entirely from the will, in so far as it is taken as expressing any purpose on the part of the testator." The answer to this position is: The same thing might be said of every devise to a man and his heirs,—that, unless the "heirs" were treated as purchasers, the word could be eliminated "so far as expressing any purpose on the part of the testator." But, as already suggested and as held in the authorities, the purpose expressed by such words as are here used is that testator intends the first devisee, even though named by him as a life tenant (Grimes v. Shirk, 169 Pa. 74, 89), to take as a source of inheritable succession; and, under

the rule in Shelley's Case, the expression of such a purpose creates a fee. This rule, as said in Bassett v. Hawk, 118 Pa. 94, 107, is "so thoroughly fixed in our law, and upon it depends so many valuable land titles, that it would be a very serious breach of our judicial duty to even hesitate to enforce it." The court below concluded that the testamentary clause before us expressed an intention that those who may hereafter be ascertained to be the heirs of William L. Lyman should take a remainder directly from the testator, and that Lyman himself possessed only a life estate, having previously inserted in its opinion the following excerpt from Stout v. Good, supra: "If the words of the will show that the testator intended the remainderman to take directly from him and not by inheritance from the devisee of the life estate, then the rule [in Shelley's Case] has no application (Kemp v. Reinhard, 228 Pa. 143) ; on the other hand, if they show a contrary intention, the rule applies (Lauer v. Hoffman, 241 Pa. 315)."

The Kemp Case, cited above, is typical of other cases of its kind; there the will showed that the word "heirs" was used to express an intention that definite persons were to take, after the first devisee, directly from the testator in order to start a new line of succession. Both the particular devise there before the court for construction and other parts of the will showed testator's intention not to give a fee to the individual named as life tenant, and that, at the end of the life estate, the remainder should pass directly from testator to a designated class; the words of devise and the will as a whole were essentially different from those now before us. Under the present will, the heirs of the first named devisee are to take simply because they are such heirs; in other words, as representing the next in the line of inheritance, or, in that sense, as the natural inheritors of property given to the particular devisee. Designation as such natural inheritors is what is meant by the expression "inheritance from the devisee of the life estate," used in

Stout v. Good, 245 Pa. 383, 387, and quoted above at the end of the immediately preceding paragraph.   Before a "devise to one and his heirs" is removed from the rule in Shelley's Case, on the ground that the heirs take directly from testator, they must take independently of the fact that they are heirs of the person named as life tenant; that is to say, it must affirmatively appear that the words "heirs" was used simply as a convenient way of designating testator's ultimate devisees, and it must not appear, as here, that he treated the first devisee as a source of inheritable succession: Shapley v. Diehl, 203 Pa. 566.   In the Laurer Case,—also cited in Stout v. Good,—because the testator made it plain that he intended the first devisee, named as a life tenant, to be a source of inheritable succession, even though he in plain words added that "in no event whatever shall the fee simple......vest" in such devisee, we nevertheless held that the devisee took a fee simple under the rule in Shelley's Case.

In the face of the authorities cited, it is difficult to understand the view that the present testamentary devise did not create a fee.   The hereinbefore quoted statement from the opinion of the court below, to the effect that the words "and his heirs," after the name of a devisee, designated as life tenant, can, without more, be treated as useless and of no effect, unless construed as words of purchase, discards a world of learning, and, if adopted by us, would in effect abolish the rule in Shelley's Case, so far as this State is concerned.

It is unnecessary to pursue this subject further, however, since on the record before us neither the court below nor we are in a position to decide the point sought to be presented for adjudication, one way or the other.

In Kariher's Petition (No. 1), 284 Pa. 455, 471, we held that "jurisdiction will never be assumed [in a declaratory judgment proceeding] unless the tribunal appealed to is satisfied that an actual controversy or the ripening seeds of one, exists between parties, all of whom

are sui juris and before the court, and that the declaration sought will be a practical help in ending the controversy," adding that, in such a proceeding, "the court will not decide future rights......, unless special circumstances appear which warrant an immediate decision, as, for instance, where present rights depend on the declaration sought by plaintiff; and even then such rights will not be determined unless all parties concerned in their adjudication are present and ready to proceed with the case (see section 11 of the act) so that the judgment rendered will make the issues involved res judicata in the full sense of that term."

This case is not ripe for a declaratory judgment, first, because so far as the record shows, there is no controversy pending or threatened; next, if the contention that plaintiff's heirs have an interest as purchasers is to be adjudicated, then it is necessary that a trustee or guardian ad litem be raised for his unborn children, who, in case of his death, might be his heirs.

As to the last mentioned point, we recently said in Gill's Est., 293 Pa. 199: "Before......a definite construction [could] be placed on the property rights of others, possibly here involved, [there would have to be brought] upon the record of any proceeding instituted for that purpose every person with any possible interest whatsoever in the trust; which would mean petitioner's minor children (including both those already born and those who might hereafter be born), through properly appointed representatives (Smith's Petition, 291 Pa. 129, 132), and likewise all persons possessed of a possible ultimate beneficial interest in case of the death of petitioner without children." Cross v. Miller, 290 Pa. 213, 215, is an instance where unrepresented interests were, by agreement, brought upon the record in the Supreme Court. See also Monnia's Est., 270 Pa. 367; Hebron v. Magda, 280 Pa. 508, 510, 511; Smith v. Bloomington Coal Co., 282 Pa. 248, 253, 254. Plaintiff, having

prematurely instituted the present proceedings, should pay the costs.

The judgment entered by the court below is set aside, at cost of plaintiff.