## Pittsburgh's Consolidated City Charter.

Argued October 3, 1929. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Charles K. Robinson,* for Metropolitan Plan Commission, appellant.

*W. Heber Dithrich,* County Solicitor, with him *Mortimer B. Lesher,* Assistant County Solicitor, for Allegheny County Commissioners, appellants.

*Wm. M. Hall,* for appellee.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, October 8, 1929:

This declaratory judgment proceeding was initiated by a petition filed August 7, 1928, by the three commissioners of Allegheny County, in which the petitioners aver that they constitute the body charged with the

504

"duty of conducting all special and general elections in the County of Allegheny and of determining the various matters which shall appear upon the ballots at said election"; that pursuant to an Act of Assembly approved April 18, 1929, they had submitted to the electors of the county, at a special election held on June 25, 1929, the question of the adoption or rejection of a proposed charter for the consolidated City of Pittsburgh; that the charter had been rejected by the electors; that the Metropolitan Plan Commission had passed a resolution requesting the commissioners to resubmit it to the electors at the election to be held in "November, 1929, or as soon thereafter as in their judgment may be found possible." The petition then states: "The question of the right to resubmit the said charter......arises out of the provisions of the......amendment [to] section 4 of Article XV [of the Constitution of Pennsylvania] which provides, inter alia, 'if rejected the said charter may be re-submitted to the electors in the original, new or modified form at any subsequent election until adopted.' " Finally, the petition prays that, under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, the court below should afford the petitioners "relief from the legal uncertainty as to their rights and powers under the aforesaid amendment of the Constitution of Pennsylvania and the said Act of Assembly passed pursuant thereto, in order that they may know whether they are authorized to re-submit the said charter in the original form at a subsequent......election without further legislation by the Legislature of Pennsylvania."

On the same day, one James Philip O'Connor, "a registered voter and elector [of the County of Allegheny] and a taxpayer of said county," petitioned for leave to intervene. While this petition states a different legal view as to the general powers of the county commissioners than that averred in the petition of the latter, it alleges no controversy between the petitioner and the

county commissioners concerning the matter of submitting the question of the adoption of the proposed charter to another election. Indeed, the taxpayer petitioner could not state a controversy, even on the law of the real point in this case, for the original petition of the county commissioners frankly avers that they have no opinion on the law. No more could the taxpayer state a controversy on the facts, because the original petition of the county commissioners shows that they have neither determined to again submit the charter question nor have they refused so to do; it does not even aver that they contemplate action one way or the other.

The only other pleading in the case is a petition filed on August 15, 1929, by the Metropolitan Plan Commission, for leave to intervene. This petition recites the various Acts of Assembly under which the commission was originally appointed in 1923, "to study the subject of consolidation of the various municipalities......in counties of the second class into one municipality, and to file with the......General Assembly its report, together with an Act providing a method for such consolidation" (For rights and duties of the Plan Commission, see Acts of June 8, 1923, P. L. 688; May 14, 1925, P. L. 715; May 4, 1927, P. L. 674, and May 1, 1929, P. L. 1212) ; that, after the special election in which the charter was defeated, a meeting of the Charter Plan Commission had been held, at which a resolution was adopted requesting the commissioners of Allegheny County to resubmit the charter to the electors, at the municipal election in November, 1929, or as soon thereafter as in their judgment may be found possible. This petition, like that of the other intervenor, states no controversy of either fact or law on the point as to whether or not the county commissioners shall resubmit the charter.

Here we have a case commenced by a petition in which public officers, without averring any controverted matter for judicial settlement, ask advice on the law; this is supplemented by two intervening petitions, filed by

parties who are not in a position to litigate between themselves the governing question sought to be raised, so as to have it made res judicata against those who may be charged with official responsibility in the premises, and neither of which petitions,—no matter what difference of view between the two intervenors they may indicate,—avers or indicates any point of controversy between the intervening petitioners and the officials who filed the original petition. Such state of the record shows no controversy or "ripening seeds" of such,—in other words, "inevitable litigation,"—between parties alleged to be charged with responsibility and those wishing them to move, or desist from moving; nor do the petitions show or indicate that other established remedies are lacking to meet the real situation, all of which is essential to the relief sought in the present case.

In Kariher's Petition (No. 1), 284 Pa. 455, 471, 472, where the constitutionality of the Pennsylvania Declaratory Judgments Act was passed on, we held that, to sustain jurisdiction under the statute, facts showing an actual controversy, present or imminent, must appear, and, further, it must appear that "the judgment rendered will make the issues involved res judicata in the full sense of that term." Here the pleadings as a whole show no issues for adjudication; they contain nothing more than a prayer for advice on the law.

In Reese v. Adamson, 297 Pa. 13, 15-16, we very recently (May 13, 1929) held that jurisdiction will not be assumed in a declaratory judgment proceeding unless an actual controversy on the matter in hand exists between parties with conflicting interests, or such a situation is imminent; and, particularly, that where public officers are "uncertain and insecure with respect to their legal status and duties," unless they show an actual controversy, or some such condition as just described, giving rise to this uncertainty, they are not entitled to relief by declaratory judgment. We there said: "To controvert is to dispute, to deny, to oppose, to contest,

to take issue on......; and, so far as the pleadings show, nothing of this kind has occurred in the present case. It does not appear that the parties litigant represent adverse interests; so far as the record shows [they] have common interests,—neither side claims a right against the other...... In short, what plaintiffs ask is not a declaratory judgment,......but simply an advisory judgment...... The statute under which these proceedings were brought was not intended for any such purpose, and our opinion in Kariher's Petition (No. 1) [supra] shows that, had the design of this legislation been to obtain purely advisory judgments, the act would be unconstitutional." Finally, in Ladner v. Siegel, 294 Pa. 368, 372, 373, we said that to make the Declaratory Judgments Act available "a real controversy must exist......and mere advisory opinions are not contemplated," adding that this special remedy will not be applied "if another legal remedy is equally available." On this last principle see Dempsey's Est., 288 Pa. 458, 460; List's Est., 283 Pa. 255, 257; Leafgreen v. La Bar, 293 Pa. 263, 264. The above excerpts from Ladner v. Siegel and Reese v. Adamson, aptly fit the present case, and we need only add that, in the absence of some showing of an actual controversy, no court would have jurisdiction, either under the declaratory judgment or any other known form of procedure, to grant relief in this case; therefore, the court below should not have adjudged that the "commissioners of Allegheny County had no duty or discretion in the placing of the question of the charter for the consolidated City of Pittsburgh upon the ballot," nor should it have made any order other than one dismissing the petition.

When, and if, the point of law comprehended in the above quoted excerpt from the order of the court below again comes before us, on appeal from a decree on a taxpayer's bill or from a judgment in some other appropriate adverse proceeding, we will be in a position to decide it, and not before.

508

Neither of the New York cases cited in the briefs of appellant and appellee are binding authorities with us; but it may be noted that in both of these cases, Manhattan Bridge v. City of New York, 198 N. Y. Supp. 49, and Craig v. Commissioners of Sinking Fund, 203 N. Y. Supp. 236, the reports show an actual controversy pending between the parties to the respective proceedings, as may readily be seen by reference thereto.

For the reasons above stated, the order of the court below is reversed, and the petition for a declaratory judgment is dismissed.