RIGDON, executrix, *et al.* v. COOPER *et al.*

No. 16157. APRIL 15, 1948.

552

*Foley & Chappell, Forrest L. Champion Jr.,* and *Samuel E. Kelly Jr.,* for plaintiffs.

*Young & Hollis,* for defendants.

JENKINS, Chief Justice. ■ "If two clauses of a will are so inconsistent that both can not stand, the later will prevail; but the whole will is to be taken together, and operation is to be given every part of it, if this can be done without violating its terms or the intention of the testator. And the intention of the testator is to be sought by looking to the whole will rather than to detached parts of it." *Rogers* v. *Highnote,* 126 *Ga.* 740 (1) (56 S. E. 93). "Before a posterior provision shall be given the effect of nullifying a devise previously made in the will, the con-

flict between the two provisions must be irreconcilable." *Barker* v. *Haunson*, 174 *Ga.* 492, 500 (163 S. E. 163).

■ Under the provisions of item 6 of the will, the niece of the testatrix was made life tenant of the residuary estate, both real and personal alike, and was thus given a legal life estate in the personal property as specie or specifics. This being the case, it would be the duty of the executrix upon completion of the duties of administration to turn such properties over to the life tenant as life tenant, unless the provisions of items 8 and 9 showed a contrary purpose and intent on the part of the testatrix. This does not seem to be disputed. Counsel for the defendants in error (the remaindermen) in their admirable brief use this language: "In the case at bar the court is not confronted with the difficulty of reconciling an inconsistency which would have the effect of defeating testamentary intent. This court can give full expression to every intention expressed in the language of this will by looking to the whole rather than to detached parts of it. Construed as a whole, the life tenant would take as provided in item six of the will, and the executrix (who is also the life tenant) would be vested with the management and control of the residue of the estate for the duration of the life tenancy, and for the benefit of the life tenant, and the protection of remaindermen, as clearly provided in item eight thereof." And in their supplemental brief they say, "We do *not* contend that item eight of the will diminishes the legal life estate set up in item six; we contend rather that it prevents the executrix from assenting to the devise during the life of the life tenant, merely postponing the vesting of possession." The Code, § 85-604, declares that "The tenant for life shall be entitled to the full use and enjoyment of the property." In *Thomas* v. *Owens*, 131 *Ga.* 248 (62 S. E. 218), this court quoted item five of the will there under construction as follows: "Item Fifth: I nominate and appoint as my executors, Margaret W. Thomas and my nephew, George W. Owens, and authorize and direct them, or either of them, to sell and dispose of my property at public or private sale, as may be deemed best, and to reinvest the proceeds of sale in such property as may be deemed to the best interest of my estate, without any order of court being applied for or had for said sales or

investments. Codicil: I republish and reaffirm said will, save and except that I direct that my estate shall not be divided during the lifetime of my sister, Margaret W. Thomas, but shall be held together until her death. I bequeath to my said sister, Margaret W. Thomas, the income from my estate during her life, and on her death direct that said estate be divided as devised and directed in my will last mentioned." After thus quoting from the will in that case, the court went on to say (Italics ours): "Having come to the conclusion that the devises in fee to Mrs. Thomas in the will are not affected by the codicil, and that by force of the codicil Mrs. Thomas takes a life estate in the property devised to the other legatees, the next question is, whether Mrs. Thomas is entitled to the possession of the estate, or should it remain with the executors until the death of Mrs. Thomas and then be divided by them? There is no pretense that the estate owes any debts. Mrs. Thomas is sui juris and laboring under no disability. She is entitled to the full use and enjoyment of the property devised to her, unless restrained by the will and codicil. *She is as much entitled to the possession of the estate devised for life as that devised in fee, if the will does not give possession to the executors until her death. A tenant for life is entitled to the full use and enjoyment of the property. . . In this respect there is no difference between realty and personalty.* As was said in *Bowman* v. *Long, 26 Ga.* 146, 'In a life estate the tenant is entitled to have the possession of the property for his own enjoyment; and all that the remainderman can require is that the corpus of the property shall be kept in preservation, to be delivered to him on the termination of the life estate. . . Of course, this rule must be subordinate to the rule that the corpus is to be so kept that it shall be preserved for delivery to the remainderman, on the termination of the life estate. The law has ways by which it can effect this object, and yet not deprive the tenant for life of the use and profits of the property during his life. It can require him to give security for the forthcoming of the property at the termination of the life estate.' . . We take it to be well settled, therefore, that, unless otherwise provided in the will and codicil, Mrs. Thomas is entitled to the possession of the property devised to her, to the exclusion of the executor."

See also *Pass* v. *Pass*, 56 *Ga. App.* 59, 61 (192 S. E. 64). It might be added that, in reissuing stock certificates to the life tenant, they could, and we think should, be required to be issued in her name as life tenant under the will in question. It is, of course, manifest and well settled that a life tenant can convey no greater title than he or she may own. Some difficulty is encountered by the rule quoted, with apparent approval, from Golder *v.* Littlejohn, 30 Wis. 344, 351, by this court in *Clark* v. *Clark*, 167 *Ga.* 1, 12, (144 S. E. 787), as follows: "The general rule is, that where there is a bequest of the whole of the testator's personal estate, or of the residue thereof after the payment of debts, expenses of administration, and legacies to one person for life, with the remainder to others after the termination of the life estate, the whole property must be converted into money and invested in permanent securities by the executor, and the income only paid to the legatee for life. But if it can be gathered from the will that the testator intended that such legatee for life should enjoy the property in its then condition, the bequest is specific, and the legatee is entitled to the possession and enjoyment of the property thus specifically bequeathed, although the bequest be made in general terms, and without any particular designation of the property." It will be noted that the rule quoted from the Wisconsin case relates to a residuary estate of personalty, whereas in the instant case the residuary life estate given by the same devise covered both realty and personalty alike, and there is nothing in item 6 to suggest that the personalty was to be held in any way different from the realty. On the contrary, item 6 gives both realty and personalty to the life tenant, not only to "have" but to "hold." We think it not only reasonably clear but certain that, so far as item 6 is concerned, the will gave the personalty to the life tenant in specifics to have and to "hold," and that under the terms of item 6 the case would fall under the exception rather than under the general rule quoted in the *Clark* case; and that the life tenant, as life tenant, was therefore entitled to receive, possess, and hold such specifics in kind, upon the completion of the administration, unless it be that items 8 and 9 show with all reasonable clearness a contrary intent on the part of the testatrix.

■ Do items 8 and 9 modify item 6? First, was an implied

trust created? All the duties imposed by item 8 being in terms imposed upon the executrix, what was said by the Court of Appeals in *McDowell* v. *McDowell*, 68 *Ga. App.* 363 (3) (22 S. E. 2d, 851), seems not only sound but applicable here. In that case it was held: "The mere fact that special duties may extend over a period of years, or that they *might* have formed proper subject-matter for an express special trust, had the testator seen fit to so provide, will not prevent the executor from performing such duties *as executor*, or necessitate the decreeing of a trust." Accordingly, it can not properly be said that a trust can be implied in this case, since it is the well-recognized rule that, even where there is doubt as to whether the executrix is to act as such or as a trustee, the doubt is to be resolved in favor of the executrix, and no trust will be implied unless the language of the will should so require. See Thompson on Wills (2d Ed), § 557. Moreover, as is well known, the completion of administration of a large estate such as this, including the adjustment and payment of inheritance taxes, may require a number of years, and the powers and authorities conferred upon the executrix by item 8 as to filing the usual annual returns as required by law unless relieved from such duty, with the additional duty, imposed in this case, of furnishing one of the remaindermen, who it appears was in the Navy, with copies, pertained on their face to the duties of an executrix while in the course of the regular administration of the estate. The same can be said with respect to the commonly given power authorizing the executrix to sell "any" of the assets at private sale. Without this authority, whatever sales might prove necessary for the payment of debts, including inheritance taxes and expenses of administration, would involve expense to the estate, and subject it to possible sacrifice under an ordinary public sale. There is nothing unusual in such a provision as related to an executrix. In *Thomas* v. *Owens,* supra, where the will contained a similar provision as to sales and reinvestments, this court said: "This was a discretionary power given to the executor and executrix, and there is nothing in the will to indicate that this power was given for any other purpose than to facilitate the administration of the estate." The further provision, authorizing, but not requiring, the executrix to

reinvest any funds belonging to the estate in Government bonds or first mortgages, likewise on its face refers to funds coming into her hands during the course and progress of administration. The record does not disclose what cash was left on hand by the testatrix, but it will be recalled that she owned certain preferred stock in a Georgia corporation. Such a construction seems to be made additionally clear by the added expression that the executrix is so authorized "in order to make the income from my estate of substantial benefit to my niece, Heath Cooper Rigdon." Nor is there anything to imply a trust in the provision that the *executrix* is directed to consult a named firm of attorneys in her acts and doings in the *administration* of the estate. That the advice of an attorney might be needed in the administration of an estate of such large size, involving the payment of inheritance taxes, seems evident enough. Accordingly, it is our opinion that there is nothing in items 8 or 9 in conflict with item 6, such as could be taken to imply that it was the intention of the testatrix that the estate should be held during the life tenancy by a trustee, rather than being paid over to the life tenant after due administration.

But is item 6 modified by items 8 and 9, in that these latter sections evidence an intention by the testatrix that the executrix, acting as such, should be required to hold the estate together during the entire period of life tenancy, and pay to her, the life tenant, only the income derived from the residuary estate? As we construe the will, there is no more reason to assume that such duties are imposed upon the executrix, as executrix, than there is to find that an implied trust must be assumed in order for a trustee to do so. The will certainly does not so provide by its terms. As already pointed out, all the duties required and authorities conferred upon the executrix seem to relate naturally to the *administration* of the estate, and the powers conferred, most of which are usual and commonplace enough, do not indicate a contrary purpose and intent. Item 6 indisputably gives a life estate in the residual estate, both real and personal owned by the testatrix, to the niece, who is named executrix, and there would seem to be nothing in items 8 or 9 which would curtail her rights in this devise by withholding possession from her as life tenant.

558

■ Nor do we think ¬ at the case has become moot by reason of the fact that, after tl.., trial judge had held that a trust would be implied under item ᵽᵾ and that the trustee would hold the property during the periuᴶ of the life tenancy, to which exceptions are taken, he went further to hold that she should sell all stocks and reinvest in accordance ·with the character of investments set forth in item 8. The ruling that a trust was implied, and that the trustee should hold possession and manage the property was all-controlling. If this ruling be correct, the subsequent ancillary ruling requiring sales and reinvestment by the trustee would legally follow. This is true, since a testamentary trustee may not hold investments, even though made by the deceased, save of an authorized. type. *Clark* v. *Clark,* 167 *Ga.* 1, 2, 3 (a) (144 S. E. 787). In *Williams* v. *Frierson,* 150 *Ga.* 797 (2) (105 S. E. 475), this court said: "The decree for sale and distribution of property, based on an erroneous construction of the will as to the estate devised, will be set aside, though certain parts were not expressly excepted to." We therefore think that the movant is entitled under the exceptions taken to have the one controlling question determined, even though the additional ancillary ruling, which would follow as a matter of law but only if the first ruling were correct, was unexcepted to.

*Judgment reversed. All the Justices concur.*