DARNELL *v.* TATE *et al.*

No. 16957.   February 15, 1950.   Rehearing denied March 15, 1950.

*Henderson & Burtz, Pickett & Pickett,* and *James H. Therrell,* for plaintiff.

*Wood & Tallant, Hall & Bloch, Tye, Thomson. & Tye, H. G. Vandiviere, H. L. Buffington Jr.,* and *William A. Ingram,* for defendants.

ALMAND, Justice. The motion of the plaintiff in error to amend the bill of exceptions by naming L. E. Tate, in his capacity as executor of the will of S. C. Tate, deceased, as a defendant in error, and to have the demurrer of L. E. Tate, as

executor, and the order sustaining the same considered by the court as a part of the record, is granted.

■ As we construe the petition, as amended, it is an action for a declaratory judgment under the act of 1945 (Ga. L. 1945, p. 137, Code, Ann. Supp. § 110-1101 et seq.); and the prayers for a construction of the will, and the injunctive relief against the pending application of the executor in the court of ordinary to resign, are only incidental to the primary relief sought, viz., a declaration of the plaintiff's rights and the defendant executor's duties. The question raised by the general demurrer and first to be considered, is whether the facts alleged in the petition were sufficient to authorize the superior court to entertain the proceeding for a declaratory judgment under the provisions of the act of 1945, supra.

The words "actual controversy," in section 1 of the Declaratory Judgment Act, mean a justiciable controversy, where interested parties are asserting adverse claims upon a state of facts wherein a legal judgment is sought that would control or direct future action. The danger, dilemma, or injury about which the plaintiff complains must not be speculative or contingent upon the happening of future events. There must be a present, concrete issue between the parties, wherein there is a definite assertion on the part of the plaintiff of legal rights, and a positive legal duty on the part of the adverse party which is denied by such party. Such proceeding must not be merely one in which the court is called upon to decide an abstract or theoretical question of law, or to give an advisory opinion. Questions which are merely incidental to and determinative of no controversy between the parties are not the proper subject-matter of a declaratory-judgment proceeding. See *City of Nashville* v. *Snow*, 204 *Ga.* 371 (49 S. E. 2d, 808); *Brown* v. *Lawrence*, 204 *Ga.* 788 (51 S. E. 2d, 651); Aetna Life Ins. Co. *v.* Haworth, 300 U. S. 227 (57 Sup. Ct. 461, 81 L. ed. 617, 108 A. L. R. 1000); City and County of Denver *v.* Lynch, 92 Colo. 102 (18 Pac. 2d, 907); Family Loan Co. *v.* Hickerson, 168 Tenn. 694 (73 S. W. 2d, 694). Borchard on Declaratory Judgments (2d ed.), p. 56; Anderson on Declaratory Judgments, 100, § 28.

In determining whether sufficient facts had been alleged to state a cause of action for declaratory judgment, the words,

"actual controversy, or the ripening seeds of one," have been frequently used. Petition of Kariher, 284 Pa. 455 (131 Atl. 265); In re Cryan's Estate, 301 Pa. 386 (152 Atl. 675), and cases there cited; Huester v. Lackawanna County, 308 Pa. 9 (161 Atl. 537). It has been said that the term, "ripening seeds," merely means a state of facts indicating "inevitable" or "imminent and inevitable" litigation. In re City of Pittsburgh's Charter, 297 Pa. 502 (147 Atl. 525); In re Cryan's Estate, supra; Schoenbrun v. Nettrour, 300 Pa. 474 (61 Atl. 2d, 868). In In re Cryan's Estate, supra, it was said: "If differences between the parties concerned, as to their legal rights, have reached the stage of antagonistic claims, which are being actively pressed on one side and opposed on the other, an actual controversy appears; where, however, the claims of the several parties in interest, while not having reached that active stage, are nevertheless present, and indicative of threatened litigation in the immediate future, which seems unavoidable, the ripening seeds of a controversy appear."

Where the questions to be answered are legal ones determinable in another proceeding then in progress between the same parties, in a court, having jurisdiction to determine them, the court will ordinarily refuse to entertain a declaratory judgment proceeding. *Shippen* v. *Folsom*, 200 *Ga.* 58 (7) (35 S. E. 2d, 915). Professor Borchard in his authoritative work on "Declaratory Judgments," cited supra, has this to say: "Courts frequently put their refusal to issue declarations in particular cases on the ground either that some tribunal has been given statutory jurisdiction and that it would be a usurpation on their part to assume jurisdiction, or that as a matter of policy or discretion the determination should be left to some qualified authority or official already vested or who can be vested with jurisdiction over the subject matter." Pp. 248, 249. "Where an action or proceeding is already pending in another forum involving the same issues, it is manifestly unwise and unnecessary to permit a new petition for a declaration to be initiated by the defendant or the plaintiff in that suit. This rule embraces not only cases where the identical issues between the same parties are *sub judice,* but also possibly cases in which the issues only are identical, but not the parties." Pp. 350, 351.

Section 7 of the Declaratory Judgment Act (Ga. L. 1945, pp. 138, 139, Code, Ann. Supp., § 110-1107), provides that, "without limiting the generality" of any preceding section of the act, any person interested as a legatee or heir in the administration of an estate "may have a declaration of rights or legal relations in respect thereto and a declaratory judgment . . (c) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings." Rights given under this section must be construed in connection with section 1 of the act, viz., there must exist an actual justiciable controversy between the legatees, as to questions arising out of the administration of the estate, or disputed questions necessitating a construction of the will or other writing. In this connection, see Lyman v. Lyman, 293 Pa. 490 (143 Atl. 200); Sterrett's Estate, 300 Pa. 116 (150 Atl. 159); Mulcahy v. Johnson, 80 Colo. 499 (252 Pac. 816).

Some courts have held that declaratory relief may be refused where by laches or by reason of long delay a judgment in favor of the plaintiff would result in possible injury to third parties. Curtis v. Sheffield, 21 Ch. D. 1 (C. A. 1882); Borchard on Declaratory Judgments (2d ed.), p. 305. For cases where equitable actions by heirs at law were held to be barred by laches, see *Fuller* v. *Little*, 59 *Ga.* 338; *Leverett* v. *Stevenson*, 81 *Ga.* 701 (8 S. E. 72); *Word* v. *Davis*, 107 *Ga.* 780 (33 S. E. 691); *Flanders* v. *Flanders*, 23 *Ga.* 249; *Newton* v. *Roe & Beckom*, 33 *Ga.* 163.

It is asserted that a justiciable controversy exists over the provisions of Item 9 of the will. The petition alleged that two grandchildren of the testator executed written assignments or transfers of all their interest in the estate of S. C. Tate, one transfer being executed on January 12, 1925, and the other on July 17, 1930. The plaintiff does not set out his contention as to the validity or invalidity of Item 9, nor does he allege what position, if any, the executor, or Tate Hinton, E. J. Darnell, or any of the other defendants takes in this matter. There is no allegation that E. J. Darnell or Tate Hinton was a legatee against whom the provisions of Item 9 operated. It is not alleged that any contention has been made by the plaintiff and disputed by any of the defendants that the plaintiff is

entitled to his proportionate share of the income now being paid to Darnell and Hinton, nor that the plaintiff has ever demanded that the executor pay him such proportionate part, though the assignment by Darnell was made in 1925 and the one by Tate in 1930. All that the plaintiff asks in this regard is an advisory declaration as to (a) whether Item 9 of the will is valid or invalid; (b) if valid, did Darnell and Tate forfeit their respective interests; and (c) if they did forfeit such interests, what would be the rights of the plaintiff. The allegations of the petition totally lack the prime essential for the maintenance of an action of this nature, in that they are insufficient to show an actual controversy between the parties regarding the validity or invalidity of Item 9. *Wright* v. *Heffernan,* 205 *Ga.* 75 (52 S. E. 2d, 289).

■ The next question is: Did the petition state a cause of action for a declaratory judgment as to whether L. E. Tate is now acting as executor, or as trustee, under the will, and if he is acting as executor, who are entitled, as "heirs and legatees" under the will, to vote in the selection of a successor executor? Ancillary to this question is one concerning the jurisdiction of the court of ordinary to accept the resignation of L. E. Tate as executor and appoint a successor as designated by a majority of the "legatees."

The contention of the plaintiff is that L. E. Tate is now holding the estate of S. C. Tate as a trustee, and only the superior court can accept his resignation and appoint a successor. The contention of the defendants is that the will of S. C. Tate is plain and unambiguous as to the nature and character of the position now occupied by L. E. Tate under the will, that under the will his position is that of an executor, and that there is no necessity for a construction in this regard.

Where the terms of a will are explicit, definite, and unambiguous, and can be applied in the court of ordinary, there is no necessity for a construction of its terms. *Weaver* v. *McCullar,* 150 *Ga.* 820 (2) (105 S. E. 476); *Citizens & Southern National Bank* v. *Clark,* 172 *Ga.* 625 (2) (158 S. E. 297); *Hungerford* v. *Trust Co. of Georgia,* 190 *Ga.* 387 (9 S. E. 2d, 630).

An examination of the will of S. C. Tate discloses that he bequeathed all of his personal property to his ten children abso-

lutely. He devised all of his real estate to his children for and during their natural lives, and provided that "said real estate shall be kept together and managed by my executors hereinafter appointed," and that his children share the use and enjoyment of said rents, profits, issues, royalties and income arising from the real estate without limitation or remainder "except as hereinafter expressed." As to the real estate located without the limits of Pickens County, his executors were authorized to sell the same at public or private sale and divide the proceeds equally among his children. As to the real estate located in Pickens County, he directed that the same be kept together and managed by his executors "for the benefit of my said children during the life of each and all of them, and that the profits arising therefrom be equally divided among my said children then in life, and the issue of such of my children as may be then deceased leaving issue, said issue to receive such part as the parent would have received if then in life, and if no issue of such children is then in life or being, between or among the surviving children." In Item 4 the testator provided: "It is my will and desire that when the life estate of my said children shall have terminated, all of my real estate situated in Pickens County and all that part of my said real estate not situated within the limits of said Pickens County, that may not have been disposed of as provided in Item 3rd of this will" be equally divided as provided in Item 3. The executors were directed to maintain the testator's home place for the benefit of such child or children as desired to live on the property, and if no children desired to make their home on the premises, the executors were directed to keep the premises in good repair and open for the comfort and entertainment "of such of my children and relatives as may wish to visit the same." In Item 8, his executors were authorized to partition certain real estate which the testator owned in common with others. In Item 10 the testator provided that, should any of "my executors or their successors in trust hereinafter appointed" become a drunkard or negligent of his trust, he shall be immediately discharged and his letters of executorship be revoked, and "the affairs of my estate thence be managed by my other executor or executors as provided for in this will." In Item 12 the executors were empowered to renew the

lease of the marble interest in testator's lands to Georgia Marble Company, or if such lease be canceled or surrendered, the executors were authorized to enter into other new leases that in their judgment may be for the best interest of the estate, "without an order from the court of ordinary."

At no place in his will did the testator mention a trust estate or trustee, but his references were always to "my estate," or "my executors" or "executor." This court in *Rigdon* v. *Cooper*, 203 *Ga.* 547, 556 (47 S. E. 2d, 633), quoted with approval from *McDowell* v. *McDowell*, 68 *Ga. App.* 363 (22 S. E. 2d, 851), the following: "The mere fact that special duties may extend over a period of years, or that they *might* have formed proper subject-matter for an express special trust, had the testator seen fit to so provide, will not prevent the executor from performing such duties *as executor*, or necessitate the decreeing of a trust." In the *Rigdon* case it was held that, where the duties and powers named and conferred in the will relate to duties and powers of executors, no implied trust will be inferred. In *Robinson* v. *Georgia Savings Bank & Trust Co.*, 185 *Ga.* 688 (196 S. E. 395), the court had under consideration the provisions of a will, which, after designating an executor, provided that "my executor shall control and manage the rest and residue of my estate," and which granted power to the executor to sell at public or private sale on such terms as it might think best and continue so to do "as long as my estate is not completely administered and wound up," with direction that the executor pay over to certain parties proportionate shares upon their becoming of age. This court held that, while these provisions vested the executor with broad discretionary powers, and contemplated duties to be performed as executor beyond the period of one year from qualification, such duties and powers were not conferred upon it as trustee.

It appears from the allegations of the petition that all the executors named in the will except L. E. Tate are dead, and that three of the children of S. C. Tate are in life. It appears from the will that it was the intent and purpose of the testator that his executor or executors should keep the real estate together and manage the same until the death of his last child, and at that time administration of the estate would cease. We think that it clearly appears from the will of the testator, in the light

of its terms as to the nature of the trust imposed on his executors, the defendant L. E. Tate is now acting as executor and not as trustee of the testator's estate.

Under the provisions of Code §§ 113-1101 and 113-2306, the court of ordinary has jurisdiction to accept the resignation of an executor and to appoint a successor according to the manner provided for in the will. The selection of a successor executor does not involve a construction of the will, and the item of the will providing for the manner of appointing a successor is plain and unambiguous, and within the jurisdiction of the court of ordinary. Compare *Reece* v. *McCrary*, 179 *Ga.* 812 (177 S. E. 741); *Trust Co. of Ga.* v. *Smith*, 182 *Ga.* 360 (185 S. E. 525); *McDowell* v. *McDowell*, 194 *Ga.* 88 (20 S. E. 2d, 602). It is to be presumed that the ordinary will follow the correct method, and if he does not, the plaintiff has an adequate remedy by appeal to the superior court. As was said in Stewart *v.* Herten, 125 Neb. 210 (249 N. W. 552): "It may now be fairly said to be a uniform rule of construction in these states that proceedings for a declaratory judgment will not be entertained where another equally serviceable remedy has been provided for the character of case in hand," citing cases from several States. Where it clearly appears from the petition seeking a declaratory judgment as to certain matters and claims that the plaintiff, in another proceeding between the same parties, in a court of competent jurisdiction, has an adequate remedy to assert the same matters or claims, such situation does not constitute a justiciable controversy so as to authorize a court to enter a declaratory judgment, the effect of which will merely be to instruct the other court as to how it should decide a matter which is within its jurisdiction to decide. See Aetna Casualty & Surety Co. *v.* Quarles, 92 Fed. 2d, 321; United States Fidelity & Guaranty Co. *v.* Koch, 102 Fed. 2d, 288 (4).

We are therefore of the opinion that the allegations of the petition as amended were insufficient to authorize the court to make a declaration as to provisions of Item 14 of the will, and likewise insufficient to authorize the court to restrain the ordinary from proceeding upon the resignation of L. E. Tate as executor.

In paragraph 40 of the petition, it is asserted that a justiciable

controversy "exists as to whether the powers granted in the will to the nominated executors in their office of trust are personal to them, or whether such powers run with the office of trust of executor and could be exercised by the successor fiduciary selected in the manner provided by the will when, as, and if a vacancy occurs because of which a successor is to be elected." In view of the ruling made in this division, it becomes unnecessary to determine whether or not the petition set forth a justiciable controversy in this regard.

■ Error is assigned in the bill of exceptions on the refusal of the court to grant the plaintiff's request "to allow him time to amend his petition by alleging more specifically the extent to which he had been injured and damaged by reason of the transfers of their interests by Tate Hinton and E. J. Darnell," and praying for a recovery against the executor or trustee of amounts already due him by reason of the forfeiture of the interests of Tate and Darnell, if the court finds such interests to be forfeited.

It is thus seen that the error is assigned, not on the refusal of the court to allow an amendment before entry of the order sustaining the general demurrers and dismissing the case, but on the denial by the court of the request of counsel for the plaintiff to allow him time to amend the petition. In the light of the rulings which we have made in this case, the matters in which counsel for the plaintiff sought an allowance of time for the filing of an amendment would not have cured the deficiencies of the petition as against general demurrer. We therefore hold that the trial judge did not abuse his discretion in refusing to allow counsel for the plaintiff time to amend and set out the matters referred to.

*Judgment affirmed. All the Justices concur, except Duckworth, C.J., and Hawkins, J., who dissent. Atkinson, P.J., concurs in the judgment only.*