WEST VIEW CORPORATION *v.* ALSTON *et al.*

No. 17440. Argued April 10, 1951—Decided May 22, 1951—Rehearing denied June 13, 1951.

John L. *Westmoreland,* John L. *Westmoreland Jr.,* and J. *Ralph McClelland Jr.,* for plaintiff in error.

*McLennan & Cook,* contra.

WYATT, Justice. The rulings here made are confined to the issues now existing between the parties to this proceeding. These parties as well as those holding similar deeds may from time to time have other controversies on facts and law, but until such contingency actually arises, no anticipatory decision will be made. *Wright* v. *Heffernan,* 205 *Ga.* 75 (52 S. E. 2d, 289); *Darnell* v. *Tate,* 206 *Ga.* 576 (58 S. E. 2d, 160).

When parties have reduced their contracts to writing, ordinarily the rights and duties of the parties must be found in the written instrument. This rule of law is so well settled that citation of authority is unnecessary. It would serve no useful purpose to here set forth the contents of the lengthy record in this case. Suffice it to say, there is nothing in the record to remove this case from the general rule of law above stated.

The first paragraph of the decree would seem to give to the defendants in error the perpetual right to plant and cultivate shrubbery on their lots. The deed is not subject to this construction. The right to do so is stated in the deed, but the further condition appears therein that the plaintiff in error "shall have the right to enter the said lot and remove the said trees and shrubs or such parts thereof as they shall determine to be detrimental, unsightly or inconvenient." And the deed expressly provides, "no workmen other than employees of the cemetery shall be admitted into the cemetery except for the purpose of setting stonework." For the reasons above stated, paragraph two of the decree was not authorized.

The third paragraph of the decree attempts to add a completely new condition to the deed. The words "water faucets" nowhere appear in the contract between the parties, the deed, and the court was simply not authorized to write into the deed an entirely new condition.

The fourth paragraph of the decree violates the terms of the deed. The deed provides that grave markers "must not exceed

six inches in height above the surface of the ground." This language provides a maximum height, but no minimum is provided. If the management of the cemetery determines in good faith that the appearance of the cemetery will be improved by lowering all grave markers flush with the ground, they have that right.

The dances referred to in paragraph five of the decree were not public dances. The plaintiff in error disclaims any intention or desire to hold public dances on the cemetery property. It appears that on two occasions when employees of the cemetery held a banquet in the administration building located on the cemetery property, and on one occasion when florists of the City of Atlanta held a banquet at the same place, at the conclusion of the banquet there was some dancing by some of the guests. This occurred in a room in the administration building that had no windows and could not have been seen from the outside. We see no reason for an injunction against occurrences of this kind.

Paragraph six of the decree requires the plaintiff in error to maintain the cemetery in the exact condition as when the lots of the defendants in error were purchased, and further requires that, if the income from the trust fund provided under the terms of the deed is not sufficient to do so, the plaintiff in error shall "contribute to said trust fund a sum, the income from which will be sufficient to cover the cost of said care." This requirement simply adds a provision to the contract between the parties, and this the courts are not authorized to do.

It is insisted that "perpetual maintenance" means that the plaintiff in error is under the duty to maintain the cemetery as insisted upon by the defendants in error, regardless of the cost. With this we can not agree. In the deed and in all the advertising matter introduced in evidence, when the language "perpetual maintenance" was used, it was expressly pointed out that this maintenance should be from the trust fund provided for under the terms of the contract between the parties.

The general effect of the decree in this case is to place upon the plaintiff in error a much larger obligation than the contract between the parties provides for, and very largely to strip the management of the cemetery of any discretion in its manage-

ment and operation. Courts, of course, can not place upon either party to a contract greater obligations than the contract itself does. In the very nature of things, the management of a cemetery must be allowed some discretion in its operation, and so long as this discretion is exercised in good faith, and does not violate any of the terms of the contract between the parties, courts have no right or authority to interfere. It follows from what has been said above, the decree in this case was error, and the injunction should not have been granted.

*Judgment reversed. All the Justices concur, except Atkinson, P.J., and Head, J., who dissent.*

ATKINSON, Presiding Justice, dissenting. While I concur in the ruling that the company is not obligated to set aside an additional trust fund, I dissent from other rulings as follows:

As to the first paragraph of the decree, the right to plant and cultivate flowers and shrubbery on their lots is granted under condition 10 of the deed. The evidence shows that lot owners did so years ago with approval of the superintendent; and there being no evidence to show that such were now "detrimental, unsightly, or inconvenient," this paragraph of the decree was fully authorized.

I think that the third paragraph of the decree was authorized. The company had for many years permitted and encouraged owners of lots to beautify them with flowers and other plants. They had operated a horticultural department, and to encourage owners to beautify their lots sold flowers and shrubs and planted them upon these lots. To induce owners to purchase them, water faucets had been installed within 100 feet of each lot for their care and preservation. This was the standard of maintenance set by the company and existing when owners bought lots. There was evidence to show that when this dispute arose, in order to require the lot owners to accede to their plan of leveling off all lots and removing all objects except grass, the company, in order to prevent the growing of flowers and other plants, arbitrarily removed these faucets. Nor was this portion of the decree a mandatory injunction. *Manry v. First National Bank of Barnesville*, 195 *Ga.* 163, 166 (8) (23 S. E. 2d, 662); *Westbrook v. Comer*, 197 *Ga.* 433 (6) (29 S. E. 2d, 574).

The fourth paragraph of the decree was authorized by con-

dition 10 of the deed, which provided: "Headstones . . must not exceed six inches in height above the surface of the ground." This could mean nothing except that a headstone six inches in height was permitted under the terms of the deed. Lot owners having placed headstones not more than six inches above the ground have complied with the terms of their deeds, and the company has no right or authority to now remove or alter them to ground level.

As to the fifth paragraph of the decree, there was evidence that dances were permitted in the administration building which was on the cemetery premises. There is no specific provision in the deed prohibiting dances within the confines of the cemetery. But considering the purpose and terms of the deed along with the fact that the grantor is the operator of a public cemetery and each lot is one of many forming a single unit under one general management, it seems clear that the operator has an obligation to owners of lots therein to refrain from having or permitting such frivolity as dancing with its accompanying music. The agreement for maintenance, when considered in connection with the purposes and uses of the lots conveyed, covers more than the mere physical or material objects. Maintenance of a proper decorum and dignity within the cemetery is just as much their obligation as the maintenance of the driveways or the surface-water control. Cemeteries are hallowed and sacred ground and people have an inherent respect for the dead. Were this not true, there would be no cemeteries, nor cemetery companies. I think that the trial judge properly enjoined the company from conducting, allowing, or permitting dances in the administration building.

As to the sixth paragraph of the decree, as already stated in the first paragraph of this dissent, I do not think that the company can be required to set aside an additional trust fund sufficient to create an income to care for any increased cost of maintaining the cemetery. However, under condition 18 of the deed, it is their duty and not the duty of the lot owners, to maintain them. It is there stated that the purchaser of the lots "shall not hereafter be chargeable with the cost of any such maintenance and care of said lots." I can not agree with the view taken in the majority opinion, that the company's liability

for maintenance is limited to the income received from the trust fund. While this condition of the deed states that they have a trust fund, there is nothing therein that limits their liability for maintenance to the income from this fund, but on the contrary it specifically provides that the purchaser would not be chargeable with any cost of maintenance. Accordingly, it is the duty of the company to maintain the lots at its own expense if the income from the trust fund is insufficient so to do.

From what is said above, I do not think that the case should be reversed, but it should be affirmed with direction that the portion of the decree requiring the creation of a trust fund be stricken. Mr. Justice Head concurs in this dissent.